### 4523.   ELSBERY v. THE STATE.

1. Allegations in an indictment which are too general and indefinite to set forth a crime may be treated as surplusage, if there are other averments in the indictment which sufficiently allege the commission of an offense.

2. The purpose of the act approved August 13, 1910, regulating the use of automobiles, is to protect pedestrians and others lawfully on the highways of this State against the consequences of the negligent and improper operation of automobiles. Construing the word "descent," as used in section 5 of this act, in the light of its context and the declared purpose of the act, it will be held to mean a declivity in the highway

over which, from ordinary human experience and observation, it would be deemed more dangerous to operate an automobile at an excessive rate of speed than upon level ground. Such a construction of the word "descent" does not make it so indefinite and uncertain in meaning as to render this provision of the act incapable of enforcement as a penal law.

DECIDED DECEMBER 21, 1912.

Indictment for misdemeanor; from city court of Polk county— Judge Irwin. October 30, 1912.

*I. F. Mundy,* for plaintiff in error.

*J. A. Wright, solicitor; E. S. Ault,* contra.

POTTLE, J. An indictment was returned charging the accused with a misdemeanor, in that he did, on a day named, unlawfully operate an automobile on a public highway "at a rate of speed greater than was reasonable and proper, having regard to the traffic and use of the said highway at the time, and did thereby endanger the life and limbs of the persons traveling said highway at the time, and . . did then and there approach a descent in said highway near Hill's Creek Church at a greater speed than six miles per hour, contrary to the laws of said State, the good order, peace, and dignity thereof." The accused demurred to the indictment, on the following grounds: Because no violation of any valid statute of force in this State was alleged; because the word "descent," as used in the indictment, is too indefinite and uncertain; because the indictment is too vague and indefinite to set out any crime or the violation of any valid statute; because the rate of speed at which the car was being operated is not alleged; because it is not charged that the defendant did not have the car under control; because the word "descent," in the act approved August 13, 1910 (Georgia Laws, 1910, p. 90), regulating the use of automobiles, is too vague and indefinite to be enforceable, and that to apply the act to every descent would be unreasonable and uncertain; and because the indictment fails to allege the descent or rate of speed, or how or in what way the car was not under control.

The court passed an order sustaining the demurrer in part, and striking from the indictment so much of it as alleged that the machine was being operated at a rate of speed greater than was reasonable and proper, and overruled so much of the demurrer as objected to the averment that the accused approached a descent in the highway at a rate of speed greater than six miles per hour.

1. Section 5 of the act approved August 13, 1910, regulating the use of automobiles, provides that no person shall operate a machine on any of the highways of this State "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property, and upon approaching a bridge, dam, high embankment, sharp curve, descent or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." In *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523), it was held that so much of section 5 of the act above referred to as undertook to make penal the operation of an automobile "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property," was too uncertain and indefinite in its terms to be capable of enforcement. This ruling was followed in the case of *Holland* v. *State,* 11 *Ga. App.* 769 (76 S. E. 104). In each of these cases, however, it was also held that the allegation adjudged to be too indefinite to set forth a crime might be treated as surplusage, if the indictment set forth a violation of any provision of the act of 1910 which was sufficiently definite and certain in its terms to constitute a crime. As the indictment in the present case consisted only of one count, the court, of course, could not sustain the demurrer in part and strike from the indictment a part of the allegations thereof and leave the remainder to stand. But the judgment is not excepted to on this ground. If the court was right in its ruling that the indictment set forth an offense in that part thereof which charged that the accused approached a descent in the highway at a greater rate of speed than six miles per hour, then the demurrer should have been overruled entirely, and, upon the authority of the two decisions above cited, the other allegations in the indictment with reference to the manner in which the machine was operated should have been treated as surplusage. Inasmuch, however, as no distinct exception is taken to the judgment sustaining the demurrer in part, the principle of the two decisions just referred to is applicable, and the question whether the indictment in any part thereof set forth an offense will be considered.

2. The main and controlling purpose of the act of 1910 was to protect pedestrians and others lawfully upon the highways of this State against the consequences of the negligent and improper operation of automobiles. In order to carry out this purpose, it was provided that machines should not be operated at such a rate of speed, having regard to all the circumstances, as to endanger the life or limb of any person or the safety of any property. As has been pointed out above, this provision of the act is too general and indefinite to constitute a crime; but the act also provides that "upon approaching a bridge, dam, high embankment, sharp curve, descent or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." Here, then, the act is definite and certain in its terms. Its purpose is to require persons operating these machines at places along the public highway which are deemed most dangerous to have them under control, in order that when danger is imminent, the machines may be stopped and injury to persons or property avoided. The General Assembly has fixed the maximum rate of speed at which, in its judgment, these machines can be operated at the places mentioned, so that they will be under control and can be stopped so as to avoid injury to persons or property along the highway. It is immaterial whether this maximum rate of speed is too much or too little. If the machine be operated along the public highway, at any point thereof described in the act, at a greater rate of speed than six miles per hour, the operator is guilty of a misdemeanor.

It is insisted, in behalf of the plaintiff in error, that the word "descent" is so general and indefinite that a person operating a machine along a highway can never know whether he is approaching a descent within the meaning of the act. Words used in a legislative enactment are to be given their ordinary signification, unless the context demands a different construction. The word "descent," as used in section 5 of this act, must be construed in the light of the declared purpose of the act. It is true, as insisted by counsel for the accused, that the word "descent," given its literal interpretation, may include any declivity in the highway, of however small a degree, and upon this premise it is argued that it would be unreasonable to hold that the General Assembly intended to make penal the operation of an automobile at a greater rate of

speed than six miles per hour when approaching such a slight declivity in the highway that it would not ordinarily be dangerous to persons or property to operate it at a greater rate of speed. The purpose of the act being to prevent danger to the life or limb of any person, and to insure the safety of any property which might be upon the highway, the word "descent," as used in the act, will not be given the literal interpretation above mentioned. Webster's Dictionary defines the word as follows: "Inclination downward; inclined or sloping surface; declivity; slope; hence, a descending way, as a stairway or inclined passage." It is also to be observed that the word "descent" is used in the act in connection with bridges, dams, high embankments, sharp curves, and crossings of intersecting highways and railroad crossings. All of these words describe places upon the public highway where it would be more dangerous to operate an automobile at an excessive rate of speed than upon other places along the highway. Words, like human beings, are often known by their associates. The maxim, noscitur a sociis, is applicable, and the word "descent," as used in section 5 of the act, will be held to mean a declivity in the highway over which, from ordinary human experience and observation, it would be deemed to be more dangerous to operate an automobile at an excessive rate of speed than upon level ground. The General Assembly could not have intended to make it a crime to operate an automobile at a greater rate of speed than six miles an hour at every point along the highway where there was a slight incline, and where it would be no more dangerous to operate a machine at twenty miles an hour than it would be upon level ground. It would be impossible, of course, to designate the exact degree of incline that the General Assembly had in mind in using this word. But upon the application of common knowledge with reference to the highways of this State, the courts and juries may well be left to say whether or not a machine was operated upon a declivity where it would be more dangerous to run at an excessive rate of speed than it would upon level ground. The only fair test, it seems to us, which can be applied in determining whether a crime had been committed, would be to submit to the jury in each case the question whether or not the operation of the machine upon the particular descent in question would likely be more dangerous to human life and limb or the safety of property than if the machine were being

operated upon ordinary level ground. What the General Assembly evidently had in mind was such an incline on the highway as is commonly denominated a hill; that is,. a descent of such degree as that ordinarily prudent persons, in approaching it in an automobile, would check the speed of the machine. Giving the word this construction, we do not think that this portion of the act should be held to be too indefinite to be capable of enforcement. It is certain that the legislature intended to make it a crime to operate a machine upon a dangerous declivity at a greater rate of speed than six miles per hour. The General Assembly has determined that it is more dangerous to operate a machine when approaching such a declivity than it is upon level ground. If the declivity described in the indictment is one of this character, then a person operating a machine thereon at a greater rate of speed than six miles per hour is guilty of a misdemeanor. If it is not, he is not guilty.

The court did not err in overruling the demurrer, and the case should be submitted to a jury, in the light of the views herein expressed.                                    *Judgment affirmed.*