## 4132.  CARTER *v.* THE STATE.

1. So much of the act of 1910 regulating the use of automobiles as undertakes to make penal the operation of an automobile on the highways of this State "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property," is too uncertain and indefinite in its terms to be capable of enforcement.

2. The count of the accusation charging the accused with having operated an automobile "so as to endanger the life and limb of persons and the safety of property" was subject to special demurrer on the ground that it failed to show what person or what property was endangered by the running of the automobile.

3. Section 12 of the act of 1910 regulating the use of automobiles, which provides that "nothing contained in this act shall be construed as changing or interfering with any regulation or ordinance which has heretofore or may hereafter be adopted by any municipality of this State, regulating the running and operation of the machines described in this act, provided such regulation or ordinance is not in conflict

with the provisions of this act," does not render the act inoperative in a city or town which has adopted an ordinance attempting to make punishable the running of automobiles "at a rate of speed greater than ten miles per hour at corners and crossings, or fifteen miles per hour beyond crossings and corners when outside of the fire limits, or at a greater speed than five miles per hour when inside the fire limits at crossings or corners, or ten miles per hour beyond corners and crossings," within the limits of the municipality; the ordinance being void because in conflict with section 5 of the same act, which makes it a misdemeanor to operate an automobile at a rate of speed greater than six miles per hour on approaching a crossing of intersecting highways.

4. In an accusation specifically charging the illegal operation of an automobile in violation of the act of 1910 regulating the running of automobiles and conveyances of like character, it is not necessary to allege the particular power by which the automobile in question was propelled. The term "automobile" has a definite popular significance, and is understood to refer to a wheeled vehicle, propelled by gasoline, steam, or electricity, and used for the transportation of persons or merchandise.

5. As some of the rulings upon the demurrer require a reversal of the judgment of the lower court, and the subsequent proceedings in the trial were nugatory, the questions raised by the assignments of error in the motion for new trial will not be considered.

DECIDED FEBRUARY 24, 1913.

Indictment for misdemeanor; from city court of Elberton—Judge Grogan.   March 23, 1912.

*P. P. Proffitt,* for plaintiff in error.

*Boozer Payne, solicitor,* contra.

RUSSELL, J.   The plaintiff in error was convicted in the city court of Elberton of a violation of the act approved August 13, 1910, regulating the operation of automobiles on public highways of this State (Georgia Laws of 1910, p. 90).   There were three counts in the accusation: the first charging that he operated an automobile "at a rate of speed greater than was reasonable and proper;" the second, that he operated the automobile "so as to endanger the life and limb of persons and the safety of property;" and the third, that he operated the automobile on a public highway, at a place known as "Herndon's corner," "without having said machine under control," and operated it "at a speed greater than six miles per hour."

The defendant demurred to the first count upon the ground that it failed to charge a crime, and that the act itself failed to define a crime, because it failed to name any special rate of speed which would be unlawful, unreasonable, or improper.   To the second count he demurred upon the ground that the accusation failed to

show what person or what property was endangered by the running of the automobile named in the accusation. To the accusation as a whole he demurred upon the ground that the accusation failed to show that the automobile named therein was propelled by steam, gas, gasoline, electricity, or a power other than muscular power. The demurrers were overruled. The defendant then filed a plea in bar, setting up that the offense was alleged to have occurred within the City of Elberton, and that the City of Elberton having, on August 2, 1909, passed an ordinance relating to automobiles within the city limits, which fixed the rate of speed on the streets and at crossings and in approaching curves, and provided a penalty for its violation, the jurisdiction of the municipality to punish for the unlawful operation of automobiles is exclusive. This special plea was overruled and exceptions pendente lite were preserved.

1. We think the court erred in overruling the demurrer to the first count. In so far as the General Assembly attempted to penalize the operation of automobiles at an unreasonable rate of speed, the act of 1910 is void, because there is no measure by which the unreasonableness can be ascertained. The law fails to define what is reasonable or unreasonable, and hence the definition of the offense is too vague and general to constitute a crime. The degree of unreasonableness that may be deemed criminal not being fixed by law, but being left to the varying opinions of different juries, the portion of the act referring to the speed is not uniform in its operation, and for that reason is unenforceable. *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523).

2. We think also that the demurrer to the second count in the accusation should have been sustained. While, as a general rule, an accusation which defines an offense in the precise language of the statute is sufficient (Penal Code, § 929), still this is not a universal rule; and, as has been frequently pointed out in the decisions and text-books (see *Wingard* v. *State,* 13 *Ga.* 400, U. S. *v.* Simmons, 96 U. S. 360; U. S. *v.* Hess, 124 U. S. 483, 31 L. ed. 576; *Johnson* v. *State,* 90 *Ga.* 444; *Amorous* v. *State,* 1 *Ga. App.* 318; *Youmans* v. *State,* 7 *Ga. App.* 101, 112; *Burkes* v. *State,* 7 *Ga. App.* 39), there are some offenses of such a nature that a charge in the language of the statute under which the accusation is brought would be wholly insufficient to so inform the accused

of the nature of the charge against him as to enable him to prepare his defense. Every person accused of crime has the right to be sufficiently informed as to the time, place, and circumstances of the alleged offense, to identify it and enable him to prepare his defense. Presumably, at least, one accused of crime is innocent; and if he is indeed innocent, and yet the particular crime with which he is charged (identified only by its code definition) is merely alleged to have been committed by him at a time within the statute of limitations and in the county in which the accusation is preferred, he is no better informed as to the identity of the alleged criminal transaction, as to which he is called upon to defend, than were the Romans as to the provisions of the statutes which Caligula required them to obey though he purposely placed his edicts upon a column, too high to be seen.

A person who operates an automobile should as much obey the law at all times as those citizens who (like the members of this court) are unable to support such a luxury, but it is easy to conceive of a case in which, if the owner of the automobile was accustomed to use his machine even a small portion of the time, and it was charged that in the county, on some day within two years prior to the filing of the accusation (for the State is not confined to the day stated therein), and at some place of which the accusation gives no hint, he operated an automobile so as to endanger the life and limb of some person or persons whose name, age, color, sex, or place of residence is not even suggested, or so as to endanger property the nature and location of which is possibly undiscoverable, he might be placed absolutely at the mercy of the prosecution, though the testimony against him be false.

3. The question raised by the plea in abatement, based upon section 12 of the law regulating the speed and operation of automobiles and other like vehicles, as contained in the act of 1910, is, whether the State law is inoperative upon drivers and automobilists manipulating machines within the limits of a town or city that has an ordinance regulating the speed and operation of automobiles. The accused claims that it is, and that the State has no jurisdiction over the operating of automobiles and other like vehicles within the limits of the City of Elberton, which has an ordinance upon the subject.

Section 12 of the act of 1910, supra, reads as follows: "Nothing

28

contained in this act shall be construed as changing or interfering with any regulation or ordinance which has heretofore or may hereafter be adopted by any municipality of this State regulating the running and operation of the machines described in this act, *provided* such regulation or ordinance is not in conflict with the provisions of this act." The provision of the law regulating the speed and operation of automobiles is found in section 5 of the act, to wit: "No person shall operate a machine on any of the highways of this State as described in this act at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property, and upon approaching a bridge, dam, high embankment, sharp curve, descent or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." The ordinance of the City of Elberton provides: "It shall be unlawful for any person in charge of any automobile, autobuggy, motorcycle, or bicycle or other like machine, or chauffeur, rider, or driver, to run such machine at a rate of speed greater than ten miles per hour at corners and crossings, or fifteen miles per hour beyond corners and crossings when outside of the fire limits, or at a greater rate of speed than five miles per hour when inside the fire limits at corners and crossings, or ten miles per hour beyond corners and crossings, in the City of Elberton." The question to be decided by this court is, whether or not, under section 12 as set forth, the general law of section 5 is operative within the City of Elberton, or whether the City of Elberton has exclusive jurisdiction in reference to the regulation of speed and operation of automobiles within the city limits; in other words, whether the city ordinance so conforms to the statute as to be exclusive of any other regulation within the city limits. Section 12 authorizes cities and towns to pass ordinances regulating the speed and operation of automobiles (notwithstanding that there is a general law on the subject), provided only that they do not conflict with any of the provisions of the general law upon the same subject. A city ordinance regulating the operation of automobiles may contain other regulations, not inconsistent with the law of the State, and dealing with circumstances which are not included within it; but it must accord with the provisions of section 5, above set forth.

Whether the effect of section 12 of the act of 1910 is to oust the State of jurisdiction and give jurisdiction exclusively to municipal corporations, where they have valid ordinances regulating the operation of the machines described in the act, is a question that need not be determined in this case; for if such be its effect, it is so only where (to use the language of that section) the ordinance "is not in conflict with the provisions of this act;" that is, section 12 is not to be construed as excluding the operation of the State law in a municipality unless the municipality has an ordinance which conforms to the State law; and in the present case the ordinance does not conform to the State law. If the purpose is that the ordinance shall exclude the operation of the statute, it must cover the same matter, must make punishable the same conduct, and must not omit punishment for conduct punishable under the statute. It is not to be supposed that the State would abdicate its right to deal with the speed of automobiles in populous communities, where the dangers from the operation of such machines are far greater than elsewhere, if the municipal regulations should in any respect fall short of the State law on the subject. Here the ordinance allows a speed of ten miles an hour at crossings in the city, except within the fire limits, while the State law forbids a speed greater than six miles an hour on approaching crossings, in order that the speed may be reduced or the machine stopped at the crossing. Surely it could not have been intended by the legislature that such an ordinance should render immune from prosecution one running an automobile in a city, who, if he ran it at the same speed outside the city limits and in a less populous locality, would be subject to prosecution under the State law.

If the legislature intended that where such ordinances existed they should have the effect of excluding other regulation of the speed and operation of automobiles within those towns and cities in which they had been adopted, it certainly did not say so. The statute expressly says: "provided such regulation or ordinance is not in conflict with the provisions of this act." What provisions? All of the provisions; among which is found the one in section 5 regulating the speed and operation of automobiles and other like vehicles. If the legislature had meant to refer only to conflict with provisions regulating lights, numbers, signals, etc., and not the provisions regulating speed and operation, it would have specified

or indicated the particular provisions to which it intended to refer. The courts must apply to legislatures, as well as to individuals, that well known and wise presumption found in our law, that what was done was intended to be done, and in construing a statute must look to the words of the act to ascertain the legislative intent.

We therefore hold that the plea in abatement was correctly overruled, and that the municipal ordinance, in so far as it may be in conflict with the general law in any of its provisions as contained in the act of 1910, supra, is inoperative, null, and void, as usurping the province of the general law of the State as contained in section 12 of the act of 1910.

4. The demurrer upon the ground that the accusation failed to allege that the automobile was propelled by any certain kind of power was properly overruled. The words, "propelled by steam, gas, gasoline, electricity, or any other power than muscular," refer to the phrase "any other vehicle," and not to the word "automobile." The word "automobile" has a well-fixed significance in the popular understanding, and it was not the intention of the legislature to define it. It is understood to refer to a wheeled vehicle, propelled by gasoline, steam, or electricity, and used for the transportation of persons or merchandise. In our Georgia statute, the only kind of power excepted is "muscular power," applying to "any other vehicle of like kind," and not to "automobiles." The defendant could hardly seriously ask that he be informed that his automobile was not propelled by muscular power.

5. Since, by reason of the errors of the lower court in ruling upon the demurrer, to which we have referred, the subsequent proceedings in the trial were nugatory, it is unnecessary to rule upon the questions raised by the assignments of error in the motion for new trial.　　　　　　　*Judgment reversed.*