## 6372.  BONDS v. THE STATE.

The act of 1910 (Acts 1910, p. 90) amended in 1913 (Acts 1913, p. 75) regulating "the running of automobiles, locomobiles, and other vehicles and conveyances of like character propelled by steam, gas, gasoline, electricity or any power other than muscular power, upon the public and private roads of the State of Georgia," and providing for the registration and numbering of the same, the use of lights thereon, and regulating the running and speed thereof, etc., includes a motorcycle propelled by gasoline.

DECIDED JUNE 3, 1915.

Accusation of misdemeanor; from city court of Polk county— F. A. Irwin, judge pro hac vice. August 9, 1914.

*W. W. Mundy,* for plaintiff in error.

*J. A. Wright, solicitor, E. S. Ault, I. F. Mundy,* contra.

WADE, J.  Armstead Bonds was tried under an accusation charging him with a violation of the provisions of sections 5 and 6 of the act of 1910 (Acts 1910, p. 90) regulating the running of "automobiles, locomobiles, and other vehicles and conveyances of like character propelled by steam, gas, gasoline, electricity, or any power other than muscular power, upon the public and private roads of the State of Georgia."  The accusation specifically charged that the accused, on a day named, "with force and arms did then and there operate a motorcycle, same being a conveyance of like character to an automobile, being propelled by gasoline, on a public highway in said county, being the road leading from Rockmart to Antioch in said county, and did then and there approach a sharp curve on said road, where one W. W. Carmichael was there with a team on said road, without then and there having said machine under control, and then and there operating same at a speed greater than six miles per hour, and did then and there approach upon said highway a team of mules then and there being driven by W. W. Carmichael on said public highway, without then and there giving any of the signals required by law, and did then and there fail to give any warning whatever to prevent frightening said team of animals driven as aforesaid."  To this accusation the defendant demurred on several grounds, which amount altogether to a contention that a motorcycle is not a vehicle or conveyance "of like character" to an automobile, and therefore is not subject to the regulations relating to automobiles and conveyances "of like character," propelled by steam, gas, gasoline, electricity, "or any power

26

other than muscular power, upon the public and private roads of the State of Georgia;" and that the accusation failed to show or allege in what way the motorcycle was "of like character" to an automobile, since no facts were stated to establish any similarity, and the statement in the accusation that it was "of like character to an automobile" was a mere conclusion. The court overruled the demurrer, and the defendant excepted.

Section 1 of the act of 1910 aforesaid provides that it shall be unlawful for any person or persons, except in accordance with the provisions of that act, "to run, drive, or operate any automobile, locomobile, or other vehicle or conveyance of like character, propelled by steam, gas, gasoline, electricity, or any power other than muscular power, and which said vehicle shall hereafter be called machines in this act, upon or along any public road, street, alley, highway, avenue, turnpike, or any private road or way generally used by the public of this State, except and until such person or persons shall comply with the provisions of this act." Section 5 provides that "no person shall operate a machine on any of the highways of this State as described in this act at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property, and upon approaching a bridge, dam, high embankment, sharp curve, descent or crossing of intersecting highways and railroad crossings, the person operating a machine shall have it under control and operate it at a speed not greater than six miles per hour." This court held in *Carter* v. *State,* 12 *Ga. App.* 430 (78 S. E. 205), decided February 24, 1913, that so much of the act of 1910 regulating the use of automobiles as undertakes to make penal the operation of an automobile on the highways of this State "at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of such highway, or so as to endanger the life or limb of any person or the safety of any property," is too uncertain and indefinite in its terms to be capable of enforcement. In *Empire Life Insurance Co.* v. *Allen,* 141 *Ga.* 413, 415 (81 S. E. 120), decided February 26, 1914, the Supreme Court rendered a decision to the same effect. The provision limiting the rate of speed to six miles per hour under certain circumstances has been recognized and declared valid as a penal provision. Section 6 of the act provides, that "upon approaching

a pedestrian in a roadway or highway as described in this act, or a horse or horses or other draft animals being ridden or driven thereon, the person operating the machine shall give reasonable warning of its approach by the use of a bell, horn, gong, or other signal, and use every reasonable precaution to insure the safety of such person or animal, and in the case of horses or other draft animals, to prevent frightening the same." It is interesting to note that while section 1 of the act of 1910 expressly refers to "any automobile, locomobile, or other vehicle or conveyance *of like character,* propelled by steam, gas, gasoline," etc., and the title also sets forth that the act is intended to regulate the running of automobiles, locomobiles, and "other vehicles and conveyances *of like character,* propelled," etc., the amending act of 1913 (Acts 1913, p. 75) purports to amend the act of 1910 "regulating the running of automobiles, *and other vehicles and conveyances,* propelled by steam, gas, gasoline, electricity, or other power other than muscular power on the public and private roads of the State of Georgia," and the words "of like character" are omitted. However, whether the omission in the amending act of the words "of like character" be a straw which indicated the trend of the legislative mind is immaterial, since it appears that the meaning of the act can be readily reached without resorting to "straws." According to Webster's New International Dictionary (1911), not only is a motorcycle a vehicle or conveyance "of like character" with an automobile, but such a vehicle would itself be included under the term "automobile." "Automobile" is there defined as "an automobile vehicle or mechanism; especially a self-propelled vehicle suitable for use on a street or roadway." The same authority defines "motorcycle" as "a bicycle having a motor attached so as to be self-propelled." It is true the New Standard Dictionary (1913) defines "automobile" as "a self-propelling four-wheeled vehicle which travels on roadways or streets;" but it will be found, from an examination of the authorities hereinafter referred to, that in the construction of statutes, and in the interpretation of the term "automobile" by the courts, a motorcycle is ordinarily included, as is also any other self-propelled vehicle or conveyance not running on tracks; or, in other words, it appears that while the word "automobile" is applied chiefly to vehicles which have four wheels, it is not restricted to four-wheeled vehicles; and a vehicle of the character here described

may be in contemplation of law an "automobile," regardless of whether it has two, three, four, or more wheels. The word "automobile" is derived from the Greek word "autos," meaning self, and the Latin word "mobilis," freely movable—signifying self-moving or self-movable, changing its own place, or able to effect a change of its own place. "The term automobile, therefore, is derived from the Greek and Latin, and in modern English is applied generally to a self-moving vehicle designed to travel on common roads, and specifically, to a wheeled vehicle for use on roads without rails, which carries in itself a mechanical motor with its source of power." Berry on Automobiles, 1; Century Dict. "Automobile." "Automobile is the generic name which has been adopted by popular approval for all forms of self-propelling vehicles for use upon highways and streets for general freight and passenger service. However, this definition should not include such self-propelling machines . . as require tracks for their operation. In popular meaning, or as commonly understood, an automobile is a motor vehicle usually propelled by steam, electricity, or gasoline, and carrying its own motive power within itself. Concerning the use of highways, as provided in some laws, the automobile falls within the appellation of 'carriage' and 'vehicle.' Automobiles are distinguishable from locomotives and [ordinary slow-moving] traction engines by carrying loads instead of drawing them in other vehicles." Berry on Automobiles, 2. In the same work (p. 2, § 3) it is said that the term "automobile," as used therein, while it excludes the steam road-roller, . . and such vehicles as run only on tracks or rails, as well as the flying machine, "includes the automobile-bicycle and automobile tricycle." "Unless expressly excluded, the motorcycle falls within the definition of the automobile as the term has been used by the various State legislatures, and also within the general definition as heretofore given. . . The number of wheels of an automobile may be two, and then the term 'bicycle' is applied, or 'automobile-bicycle,' as sometimes called; or three, when it is called 'tricycle' or 'automobile-tricycle;' or four or more. Those with four wheels are the most usual form." Id. 5, §§ 5, 6. "An automobile may be defined as a wheeled vehicle, propelled by steam, electricity, or gasoline, and used for the transportation of persons or merchandise. The courts without making clear distinctions, have generally used the terms automobile, motor

vehicle, motor car, and, in the earlier cases, horseless carriage, as being synonymous with each other. Except where special provision is made to the contrary, a motorcycle is considered as falling within statutes which use such terms." 2 Ruling Case Law, 1167, § 3. This court, in *Carter* v. *State,* supra, said: "The term, 'automobile' has a definite popular significance, and is understood to refer to a wheeled vehicle, propelled by gasoline, steam, or electricity, and used for the transportation of persons or merchandise."

Passing from the discussion as to whether a motorcycle is included under the generic term "automobile," we come to the consideration of the precise point raised by the demurrer: Is a motorcycle a vehicle "of like character" with an automobile, as charged in the accusation? In the first place, regard must be had, as in construing any other act of the legislature, to the intention actuating the lawmakers. While it has been said that "an automobile is not classified with dangerous instrumentalities, such as dynamite, gunpowder, ferocious animals, and the like, so as to make the owner liable for injury occurring from the running of the automobile, on the same basis that an owner of such an instrumentality would be liable for an injury occasioned by it" (*Fielder* v. *Davison,* 139 *Ga.* 509, 77 S. E. 618), it is said, in the same case, that "owing to the nature and construction of the machines and the employment of steam, gasoline, or electricity as a motive power, certain dangers naturally arise from their use and operation, and those who operate them must exercise that degree of care which is commensurate with the dangers naturally incident to such use." See also *O'Dowd* v. *Newnham,* 13 *Ga. App.* 220-229 (80 S. E. 36). And in *Williams* v. *Raper,* 139 *Ga.* 811-813 (78 S. E. 253), the Supreme Court said: "It is urged that the use of the phrase, 'it being a dangerous machine,' was prejudicial and calculated to impress the jury that because of its dangerous quality the defendant was bound to exercise a greater degree of care than the law imposed. We do not think so. The General Assembly, in recognition of the character of the machine, its power and capabilities of speed, and possible danger to pedestrians and horse-drawn vehicles in its operation, have seen fit to enact a statute regulating the speed and manner of operation of automobiles on the public highways. Acts 1910, p. 90. The statement by the court of a reason for the enactment of the law, though not commended, was not so improper as to require a new

trial, under the facts of the case." This court in *Sheppard* v. *Johnson*, 11 *Ga. App.* 280-282 (75 S. E. 348), said: "The great object and purpose of the act of 1910 was to require the drivers of automobiles to so handle their motors as to protect pedestrians and other persons on the highway. The act recognizes that the driver of an automobile has an equal right to the public highway with any other person, but it is provided that this right shall be exercised only in the manner and upon the terms and conditions. prescribed by that act." In *Elsbery* v. *State*, 12 *Ga. App.* 86 (76 S. E. 779), this court again said: "The purpose of the act approved August 13, 1910, regulating the use of automobiles, is to protect pedestrians and others lawfully on the highways of this State against the consequences of the negligent and improper operation of automobiles."

It is therefore clear that the intention of the General Assembly, in passing the act of 1910 regulating the use on the public highways of this State of automobiles and other vehicles of like character, was to protect pedestrians and others traveling upon such highways from the dangers incident to the careless use of such self-propelled vehicles; or, in other words, the object of the statute was to protect the public at large from the dangers incident to a reckless, ignorant, or careless use of vehicles recognized as dangerous under certain circumstances. The danger to others which arises from the use of an automobile or vehicle of like character depends in part upon the rapid rate of speed at which such vehicles ordinarily travel, or of which they are at least generally capable, the noise usually accompanying their operation, which is calculated to frighten horses or other animals traveling along the public highways, and the difficulty with which they may be guided and controlled when running at a high rate of speed, so as to avoid collisions with persons or teams on the highway. It is a matter of common knowledge that a motorcycle propelled by gasoline is capable of a rate of speed as high as or higher than may be attained by a four-wheeled automobile; and it is equally well known that a motorcycle is even more noisy and is a more alarming object to country-bred domestic animals than is a larger type of automobile.

We may easily conclude that since the primary purpose of the legislature was to protect pedestrians and others on the highways, a motorcycle is a vehicle "of like character" with an automobile, so far as the act of 1910 is concerned; as the use of a motorcycle

on the public highways without check or regulation might bring about the same dangerous situations and possibilities that the use of the four-wheel automobile might produce. It is immaterial, so far as frightening a horse on the roadway is concerned, whether the self-propelled machine which approaches at an unlawful rate of speed, wrapped in a cloud of smoke, emitting and accompanied by the vile smell of exploding gasoline, runs on two wheels or four; for it may not be imagined that a horse which would take fright at a four-wheel vehicle would not be equally frightened at the too rapid approach of a two-wheeled vehicle of like character, so far as its capacity for rapid movement, its noise, and its smell are concerned. Again, pedestrians and others might be in equally great or greater danger from a gasoline-propelled motorcycle than from an automobile, conceding that they both make the same amount of noise, if either approached at a rapid rate of speed around a sharp curve in the road, as charged in the indictment in this case.

It would be fruitless to multiply words further, as the matter may be summed up in the simple statement that, since (according to repeated rulings of this court) the object of the legislature in passing the act of 1910 was to protect pedestrians and others from automobiles and other vehicles of like character propelled by gasoline, etc., a motorcycle—a vehicle propelled by gasoline, and which, when not regulated in accordance with law, is, according to common knowledge (of which this court must take judicial cognizance), more dangerous to the general public traveling on the highways than ordinary horse-drawn vehicles or others propelled by muscular force—is, in contemplation of law, a vehicle "of like character" with an automobile—a vehicle also propelled by gasoline, also capable of high and dangerous speed, likewise noisy and calculated to frighten teams, and difficult to guide or arrest quickly when traveling at a too-rapid rate of speed. We therefore hold that the court did not err in overruling the demurrer to the accusation.

*Judgment affirmed.*