33202. THE LIFE & CASUALTY INS. CO. OF TENN. *v.* BENION.

DECIDED OCTOBER 6, 1950. REHEARING DENIED OCTOBER 28, 1950.

*William F. Buchanan, Mary J. Nelson,* for plaintiff in error.
*Bill A. Shirley, Ruby S. Poole,* contra.

FELTON, J. ■ The defendant's first contention is that the automobile which the insured was using in participating in a stock car race was in fact a racing car and not an automobile within the meaning of the policy. The terms of the policy do not undertake to define an automobile. Therefore, the term must be given its legal signification. "The word 'automobile' has a well-fixed significance in the popular understanding . . . It is understood to refer to a wheeled vehicle, propelled by gasoline, steam or electricity, and used for the transportation of persons or merchandise." *Carter* v. *State,* 12 *Ga. App.* 430 (4) (78 S. E. 205). The petition alleges that the insured was driving a 1939 model Ford coupe automobile. The fact that at the time he was injured the insured was driving the automobile in a race did not change the inherent nature of the vehicle. That pertained merely to the use to which the automobile was being put. The policy did not contain any reference to or restrictions on the use of the automobile. If the insurer meant to restrict the use of such automobile, it could easily have done so by the insertion of a use-restriction clause in the policy. The policy restricted recovery under its terms for injuries received by the insured while a pedestrian, to injuries caused by being struck by certain named vehicles while walking or standing on a public highway. Had the insurer meant to restrict the recovery for injuries received while driving or riding in an automobile to those received while driving or riding on public highways, it could have done so by a limitation similar to that in the pedestrian clause. The only significance the word "private," used in the phrase "private motor driven automobile," has, is to distinguish automobiles owned and operated for private purposes from those used for public or semi-public purposes, such as public conveyances.

■ If the petition had, in addition to the facts alleged, alleged that the insured lost control of the machine unintentionally and accidentally, it could not be said that engaging in a stock car race is so dangerous as to take the misfortune of the insured out of the realm of accident or accidental means. In the absence of a provision in the policy so declaring, "recovery on an accident insurance policy is not defeated by the mere fact that negligence of the insured contributed to the injury." 29 Am. Jur. 715, § 942. "Voluntary exposure to danger by the holder of an accident insurance policy will not defeat recovery for an injury caused by accidental means, where such exposure is not an exception in the policy, and the insured has no intention of producing the injury received." Ib. 716, § 944. The cases cited by the insurance company to sustain its contention that the death was not accidental or due to accidental means are not to our minds analogous to the instant case. In those cases the injury to the insured was considered by the courts to be almost the inevitable consequence of the insured's voluntary and intentional act, and the acts were regarded as so wanton as to amount to intentional self-inflicted injury. The cases cited are as follows: Ford v. Standard Life Ins. Co., 12 C.C.H. Life Cases, 7 (a) 89 (where the insured died as a result of a snake bite while voluntarily handling a rattlesnake during a religious ceremony); *Metropolitan Life Ins. Co. v. Anglin, 66 Ga. App.* 660 (19 S. E. 2d, 171) (where the insured was killed by one whom he had threatened with a loaded revolver); Peoples Loan & Investment Co. v. Travelers Ins. Co., 151 Fed. 2d, 437 (where the insured was killed by an officer whom he had assaulted after attempting to escape); Thom v. Metropolitan Life Ins. Co. (La.) 2 So. 269 (where the insured was killed by his son after the insured had choked his wife and chased the son for several blocks with a revolver); Sellars v. John Hancock Mutual Life Ins. Co. (Mo.) 149 S. W. 2d, 404 (where the insured was killed while attempting to escape from Federal officers); Zuliskey v. Prudential Ins. Co. of America, 159 Pa. Super. 363 (48 Atl. 2d, 141) (where the insured deliberately jumped from a motor car traveling at a speed of about twenty-five miles an hour); Kinavey v. Prudential Ins. Co. of America, 149 Pa. Super. 568 (27 Atl. 2d, 286) (where the insured, while intoxicated, climbed over the rail-

ing of a bridge and fell while performing stunts which caused him to lose his balance and fall and drown). We do not mean to intimate that we agree with the holding in every one of the outside cases above cited. We mention them only to show the theory upon which the courts decided them.

■ The petition is subject to general demurrer because it does not allege that the death was by accident or accidental means. While it may be contended that under the facts alleged in the petition a presumption would arise that the insured did not intentionally lose control of the automobile, presumptions and inferences cannot be invoked in aid of pleadings unless the presumptions or inferences necessarily and absolutely follow from the facts alleged, and such is not the case here. The mere fact of loss of control does not necessarily mean accidental loss of control in a construction of the petition against the pleader. In an action on such a policy as we have here, the petition must allege death, not only from violent and external means, but it must allege that it resulted from accidental means as well. *Newman* v. *Benefit Assn. of Railway Employees,* 173 *Ga.* 881 (162 S. E. 122); *Guardian Life Ins. Co. of America* v. *Mc-Michael,* 74 *Ga. App.* 53 (38 S. E. 2d, 689).

The court erred in overruling the general demurrer.

*Judgment reversed. Sutton, C.J., and Worrill, J., concur.*