WHITE, Judge.
Plaintiffs Robert L. Thomas and Ruth Thomas, his wife, have regularly appealed an adverse judgment in their suit on an automobile insurance policy consequent upon damage to the automobile and disclaimer of liability by the defendant carrier. The appeal is premised on the asserted insufficiency of the answer and the evidence to establish alleged fraudulent misrepresentation by the insured so as to relieve the defendant insurer of its obligation under the policy.
*? Plaintiff Robert L. Thomas was connected by agency employment with a certain insurance company for several years. He was owner or joint owner of three cars, two of which he insured with his employer company whose policies expressly excluded losses due to racing. His third car was a Fiat, variously denominated in the record as a sports car and as a “compact.” On this car he obtained by telephone a policy through another agency with which he previously and currently had business relations. His request was to provide the same coverage as in some previous policy he had obtained through the same agency. The-only questions asked him concerning the contemplated use of the Fiat were whether it was to be used for business or pleasure and whether it was to be driven regularly to and from work. He replied that it was to be used for pleasure and not to commute to and from work.
There was no request for placement of the policy with any particular company, and the agency selected defendant Pennsylvania Threshermen & Farmers’ Mutual Insurance Company as underwriter. In contrast to standard form policies issued by many other insurers, this policy did not exclude property loss due to racing. The Fiat was initially classed by the defendant as a “compact” car.
Upon issuance of the policy the defendant sent a representative to inspect the car. In the course of inspection the representative asked the plaintiff wife whether there was anyone in the family who would drive the car other than herself and husband and whether the car would be driven to work. It is not contended that these or any direct questions asked by the defendant’s representatives were answered untruthfully. Neither this nor any other representative of the insurer asked the insured husband or wife whether the vehicle might be used for racing; but, after the car was damaged as hereafter described, the defendant protested liability on the ground that the insured, without being asked, should have volunteered information as to whether or not it was contemplated that the car might be used for racing.
Some time after issuance of the policy the plaintiff husband installed a larger engine in the Fiat. He informed the agency to that effect since apparently the car did not then qualify for a special discount given to cars in that category. The defendant thereupon increased the premium, but again no further questions were asked concerning the past or future use of the car. After possessing the car for some time plaintiffs permitted a friend, one Andrew Furlani, to drive it occasionally in amateur sports car races. These races were indulged in solely for pleasure, and no monetary prizes were given or expected.
Later, after deciding to sell the vehicle, the plaintiff husband removed the larger engine and replaced it with a smaller one. He so informed the defendant, but instead of decreasing the premium the defendant increased it apparently because of the realization that the Fiat was in fact a sports car rather than a conventional compact. Although they contemplated selling the car as above noted, plaintiffs meanwhile permitted Andrew Furlani to drive it in another amateur race in the course of which the car was totally damaged in the agreed amount of $2,000.00. The claim was rejected by the defendant, and thereupon plaintiffs instituted suit followed by the adverse judgment and this appeal.
Generally, unless there are special limitations in a collision policy, the coverage extends to all losses caused by accidental collision. E. g. Suttles v. Blue Ridge Insurance Co., 1953, 238 N.C. 539, 78 S.E.2d 246. In that case the insured’s vehicle was destroyed in a stock car race. Although there was no racing exclusion in the policy, the company denied that the vehicle was covered. The court held:
“The general rule in this respect is stated in 45 C.J.S., Insurance, § 798a, P. 841, as follows: ‘Unless there are special limitations in a policy insuring *12 against loss of, or damage to, an automobile caused by accidental collision, the coverage extends to all losses caused by accidental collision however occasioned’.
“Likewise, in Appleman’s Insurance Law and Practice, Volume 13, section 7465, page 190, we find the following statement: ‘A collision clause is strongly construed against the insurer upon the basis that, if it desired to insert exceptions precluding liability under the circumstances presented, it should have done so by inserting such exceptions as would limit the effect of the general terms employed,’ citing St. Paul F. & M. Ins. Co. v. American Compounding Co., 211 Ala. 593, 100 So. 904, 35 A.L.R. 1018.
* * * * * *
“We think the use of the automobile permitted under the policy is broad to cover the car while it was being operated for any legitimate purpose not expressly excluded by the terms of the policy.”
See also Life & Casualty Ins. Co. of Tennessee v. Benion, 82 Ga.App. 571, 61 S.E.2d 579; 29 Am.Jur., Insurance, § 944.
The defendant’s response to the complaint was an extensive answer containing general denials and allegations by way of special defense. Substantially all of the answer was striken on motion except for a paragraph alleging that plaintiff Robert L. Thomas had fraudulently misrepresented or concealed an intended use of the car, viz., racing, in the course of which the loss subsequently occurred.
This special defense was set forth in lengthy form and was read in full to the jury over objection. It alleged in essence that plaintiff Robert L. Thomas was an experienced insurance man who should have known that racing a car was material to the risk: and that he knew of several companies which specifically excluded such coverage; that he could have had a reduced premium by insuring through his own employer; that he knew the car had been raced and would be raced by a fellow employee; that he should have known that the defendant would not have issued the policy had it been aware of the situation; that the failure to provide such information constituted concealment ; that the car was raced and wrecked with plaintiff’s knowledge and that plaintiff’s conduct amounted to fraudulent misrepresentation rendering the policy void or voidable.
The plaintiffs moved unsuccessfully to strike the foregoing special defense on the ground that it attempted by conclusions and extraneous matter to place an improper burden on the plaintiffs and contained no allegations of ultimate fact which would constitute fraudulent conduct. The trial, as noted, resulted unfavorably to the plaintiffs.
 Fraud, actual or constructive, is not presumed. It must be specifically alleged and proved by clear and convincing evidence which we find conspicuously lacking in this case. Having provided no exclusionary clause and made no inquiry as to whether the plaintiffs contemplated racing the sports car in question, the plaintiff on this record cannot be heard to deny liability even though the policy may have been issued improvidently.
There was no showing that the plaintiffs gave false answers. The defendant nevertheless urges that the circumstances are sufficient to sustain a reasonable inference of fraudulent concealment; but such an inference would be no more permissible than an inference that the defendant by not excluding the risk in question — in contrast to competitor companies — intended to cover it.
Actually, a studied attempt to draw and evaluate comparative inferences, a typical jury function, is rendered unneces *13 sary here by the context of evidence which we deem plainly insufficient to establish the asserted defense. Specifically, the evidence of plaintiffs’ unchallenged silence as to whether or not they contemplated racing the insured vehicle does not justify a finding of fraudulent conduct.
The defendant’s failure to establish its defense more or less compounds its previous failure to issue a policy with the exclusionary effect it later sought to impose in this litigation. The limits of insurance coverage are formalized in contracts prepared by the insurer; and if it is the rule or intent of the insurer not to underwrite a particular kind of risk, the exclusion thereof can be easily specified in its standard policies — or at least added by endorsement after pointed interrogation of the applicants.
The defendant has cited 9 Couch on Insurance, 2d. 38:45 :
“The insured must not, when he has knowledge thereof, actual or presumed, withhold information of unusual or extraordinary circumstances of peril to which the property is exposed, where the insurer could not through the exercise of reasonable diligence discover such information by its own efforts and the existence of the perils could not be reasonably anticipated by the insurer as the basis for specific inquiries.” (emphasis added)
Relating the foregoing quotation to the instant situation does not strengthen the defendant’s position. Sports cars are widely recognized as distinctive in class and design, and they are often entered competitively in various automotive shows and amateur racing exhibitions. Owners have formed numerous sports car clubs throughout the nation. This was all within the knowledge of the defendant who had inspected the involved car and deliberately insured it. The plaintiffs denied conscious withholding of information and the evidence clearly falls short of showing any risks that the defendant itself could not have discovered and anticipated through the exercise of reasonable diligence. 9 Couch on Insurance, 2d. 38:45, supra.
This decision does not condone either thoughtless or conscious withholding of material factual information in matters of business. We simply are convinced that the asserted defense lacked the necessary implementation. It raised at most a suspicion of unethical conduct by an experienced applicant in not volunteering to point out a possible .future car use — a contingency which was not inquired into, would not be illegal if it occurred and was not excluded in the defendant’s standard policy. The evidence was too weak to convert conjecture into reality and too tenuous to void the policy on the ground of fraudulent concealment. We stress again that racing is not in itself a forbidden activity; and if racing was in fact contemplated by the plaintiffs, it was a lawful indulgence commonly pursued by sports car enthusiasts.
There is no question that presumptively the plaintiffs were entitled to recover their loss implicitly covered by the policy. Since the defense of fraudulent procurement fails for the reasons stated, the judgment is reversed and the cause remanded with directions to set aside the verdict and enter judgment for the plaintiffs.
Reversed.
SMITH, C. J., and WILLSON, J. H., Associate Judge, concur.