60236. LUMBERMENS MUTUAL CASUALTY COMPANY v. COMMERCIAL UNION ASSURANCE COMPANY et al.

CARLEY, Judge.

On May 6, 1978, appellant-Lumbermens Mutual Casualty Company (Lumbermens) issued a policy of automobile liability insurance to Levi Holmes, naming as the "covered auto" Holmes' 1972 Ford Torino. At the time this policy was issued Holmes also owned an inoperable 1969 Volkswagen which was not a named insured vehicle under the Lumbermens policy. Shortly before July 1, 1978, it became necessary for Holmes to have the Torino repaired. It was taken out of service and the Volkswagen was put in working order. While the Torino was being repaired Holmes began driving the now-operable Volkswagen. On July 1, 1978, while operating the Volkswagen, Holmes fatally struck a child on a bicycle. Elizabeth Brown, the mother of the deceased child, instituted a wrongful death

action against Holmes. An initial defense to the wrongful death action was provided to Holmes by appellee-Commercial Union Assurance Companies (Commercial Union), the insurer which afforded uninsured motorist coverage to the deceased child. Thereafter Commercial Union made demand upon Lumbermens to assume defense of Holmes in the wrongful death action. The basis for the demand was that Holmes' Volkswagen was a "covered auto" under the terms of the Lumbermens policy and that Holmes was thus an insured motorist with regard to the fatal incident. When Lumbermens did not assume the defense of the wrongful death suit, the instant declaratory judgment proceeding was instituted by Commercial Union and Holmes to establish that the Volkswagen was insured by Lumbermens and that Holmes was entitled to have Lumbermens provide him with both a defense to the pending wrongful death action and liability coverage to the extent of policy limits.

Lumbermens moved for summary judgment, contending that under the terms of its policy with Holmes the Volkswagen was not a "covered auto." Summary judgment was denied. Lumbermens' petition for an interlocutory review of the denial of its motion for summary judgment was granted in order that we might resolve what is apparently a question of first impression in Georgia.

That question is whether the Volkswagen, owned by Holmes but inoperative at the time the Lumbermens policy covering the Torino was issued, was at the time of the incident within the policy definition of "covered auto" as a private passenger auto ownership of which was acquired by the insured during the policy period. Commercial Union urges that even though Holmes owned the inoperative Volkswagen at the time the Lumbermens' policy was issued, it was not until such time as the Volkswagen was restored to running order that Holmes acquired ownership of a "private passenger auto." Commercial Union relies principally on Silverstein v. Liberty Mut. Ins. Co., 505 F2d 158 (5th Cir. 1974) and Glens Falls Ins. Co. v. Gray, 386 F2d 520 (5th Cir. 1967). In those decisions, the United States Court of Appeals for the Fifth Circuit construed the definition of "covered auto" contained in the Lumbermens' policy as Commercial Union would have this court construe it. We have studied those decisions carefully and conclude that they do not represent the better-reasoned analysis. We, therefore, decline to adopt the rule in Georgia that a "newly acquired automobile" includes an inoperative automobile owned by the insured on the date of policy and subsequently repaired during the policy period. The interpretation urged by Commercial Union would require that we ignore the clear import of the language that for coverage to be extended "ownership,"

not full operability, be acquired and redefine "automobile."

The actual relevant language of the Lumbermens policy defines "your covered auto" as: "Any of the following types of vehicles *of which you acquire ownership during the policy period,* provided that you ask us to insure it within thirty days *after you become the owner:* (1) a private passenger auto . . ." (Emphasis supplied.) It is clear that the key to coverage under this provision is the date of the acquisition of ownership of the automobile and not the date when it first comes into service as a means of transportation. "[A] newly acquired vehicle clause is by definition restricted to a vehicle thereafter acquired, as it could not have the status of a newly acquired vehicle if owned at the time the insurance on another vehicle of the insured is procured even though it could not be run at that time because it had no motor." 12 Couch on Ins. 2d, § 45:193, pp. 240-41. Furthermore, it is clear that when Holmes acquired ownership of the inoperative Volkswagen prior to securing the Lumbermens policy, he acquired an "automobile." An "automobile" is defined in terms of design and function and not, in our opinion, operability. " 'The word "automobile" has a well-fixed significance in the popular understanding . . . It is understood to refer to a wheeled vehicle, propelled by gasoline, steam or electricity, and used for the transportation of persons or merchandise.' [Cit.]" *Life & Cas. Ins. Co. v. Benion,* 82 Ga. App. 571, 572 (61 SE2d 579) (1950). A wheeled vehicle, designed to be self-propelled and to serve as a means of transportation does not gain or lose status as an "automobile" depending upon whether at any given time it is or is not fully capable of being operated as such. The record in the instant case demonstrates that when Holmes purchased the Volkswagen, before securing the Lumbermens policy, he bought a vehicle designed to function and with the full potential to function as an "automobile," needing only repairs and restoration of missing parts to become operable. The record further indicates that when he purchased the Volkswagen it was for the express purpose of returning it to its full potential as a mode of transportation. Under these circumstances, Holmes having bought a vehicle designed to function as an "automobile" with the idea of returning it to its full functional potential as an "automobile," we find arguments that he did not acquire possession of an "automobile" until such time as that potential was fully restored to be contrary to the rule that words used in an automobile liability policy should be given their usual and common signification. *Nichols v. Ocean Acc. & Guar. Corp.,* 70 Ga. App. 169 (27 SE2d 764) (1943). To give the provision a contrary interpretation would permit an insured with a number of vehicles, some in operating condition and some in need of repair, to put them

in and out of service, contending that all are covered by the policy, when in fact no premiums are being paid for some of them. We, therefore, decline to adopt the construction of the policy provision urged upon us by Commercial Union. Rules of contract construction and considerations of public policy require that the extension of automatic coverage for after-acquired vehicles be controlled by the more easily ascertainable date on which ownership is acquired rather than by the date on which full operability is restored.

The uncontroverted evidence in the instant case demonstrates that Holmes "acquired ownership" of the Volkswagen prior to securing the Lumbermens policy and was thus the "owner" of that automobile on that date. Under those facts the Volkswagen was not an automobile the ownership of which was acquired during the policy period and that vehicle was not a "covered automobile" at the time of the fatal incident. It follows that summary judgment was erroneously denied.

*Judgment reversed. Quillian, P. J., and Shulman, J., concur.*

Argued July 9, 1980 — Decided September 30, 1980.

*David R. Smith, Ward Newton,* for appellant.
*Bobby Jones, Francis Allen,* for appellees.