A95A0597. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA v. PRESTIGE HELICOPTERS, INC. et al.
(457 SE2d 587)

ANDREWS, Judge.

National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National) filed this declaratory judgment action to determine its obligation to defend Prestige Helicopters, Inc. (Prestige), its pilot Ward, and Carroll, President of Prestige and owner of the helicopter, against a suit filed by Gleason. Gleason's husband had been killed in a helicopter crash and she and the other defendants contended that an aviation insurance policy issued by National to Prestige covered the crash. Cross-motions for summary judgment were filed on the issue of coverage. The trial court concluded that the policy provided coverage to Prestige and Ward, but not to Carroll. The court further concluded that Gleason was a proper claimant under the policy. National appeals from this ruling as to Prestige, Ward, and Gleason.

On April 22, 1992, a Robinson model R22 helicopter bearing F.A.A. No. N-2589X crashed into an Atlanta house while carrying Gleason, a professional photographer. Gleason had rented the helicopter that day to fly him over Oakland Cemetery to make photographs. Gleason was killed in the crash and Ward was seriously injured.

Prestige, located in Lawrenceville, had maintained aviation fleet coverage of its helicopters with National beginning around 1989. Policies were renewed yearly, with the new policy reflecting both the old and new policy numbers. For the year March 9, 1991 through March 9, 1992, National Policy AV 321-33-04 was issued. It specifically listed helicopter N-2589X as a covered helicopter by endorsement No. 13 effective August 12, 1991. That helicopter had been purchased by Carroll individually in February 1991. It was financed through a local bank and then leased by Carroll to Prestige on July 1, 1991.

On February 19, 1992, Prestige Helicopters subleased N-2589X to Silver Hawk Aviation Company, located in Rome, through May 31, 1992. Prestige was required by the sublease to, and did, obtain aviation insurance for the helicopter from another company. By endorsement 23, N-2589X was deleted from National's policy AV-321-33-04

effective February 21, 1992. The helicopter was taken to Rome, adapted by Silver Hawk to use regular gasoline as opposed to aviation fuel, and used exclusively by Silver Hawk in its business for the next two months.

National issued policy AV-322-08-52, reflecting the prior year's policy number as the predecessor policy, effective March 9, 1992 through March 9, 1993, with Prestige as the insured. That policy listed in Declaration Item 4 as covered aircraft four helicopters, not including N-2589X. All four of the listed helicopters were leased by Prestige from individuals or other entities, which fact was known to National. All helicopters listed under the 1991-1992 policy, including N-2589X, had also been leased by Prestige and this fact was known to National.

By mutual agreement, Silver Hawk and Prestige agreed to terminate the sublease early, effective upon return of the helicopter to Prestige, which took place April 22, 1992 when it was received at the Prestige hangar. Later that day, Gleason rented the helicopter and pilot Ward's services from Prestige.

After the accident, that same day, Prestige notified National of the accident and advised that coverage was sought under Paragraph III of the policy, titled "Automatic Insurance for *Newly Acquired* Aircraft." It provided that "[i]f the Named Insured *acquires ownership* of an aircraft in addition to the aircraft described in Item 4 of the Declarations and within ten days thereafter reports such *acquisition* to the Aviation Managers, [the agent] then the Insurance . . . shall apply to such additional aircraft as of the time of such *acquisition*, provided that [National] insured all other aircraft *owned* in whole or in part by [Prestige] on such *acquisition* date. . . . [Prestige] shall pay an additional premium required because of the application of the insurance to such other aircraft." (Emphasis supplied.)

National argues that "acquires ownership" requires that Prestige have legal title to the helicopter for the first time in order to be covered by this paragraph and that the return of the possession of a plane previously "owned" by Prestige and subleased to another entity does not satisfy this provision.

"An insurance contract is governed by the ordinary rules of construction and should be construed to ascertain the intention of the parties. *Golden v. Nat. Life &c. Ins. Co.*, 189 Ga. 79, 87 (5 SE2d 198) (1939); OCGA § 13-2-3 [(1982)]. In discovering the intent of the parties, the whole instrument should be considered together, along with the surrounding circumstances. *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975)." *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838 (1) (413 SE2d 430) (1992).

"The words used in policies of insurance, as in all other contracts, bear their usual and common significance [OCGA § 13-2-2], and poli-

cies of insurance are, as all other contracts, to be construed in their ordinary meaning." *Pilot Life Ins. Co. v. Morgan*, 94 Ga. App. 394, 398 (94 SE2d 765) (1956). See also *Fidelity &c. Co. of Maryland v. Sun Life Ins. Co. of America*, 174 Ga. App. 258, 260 (1) (329 SE2d 517) (1985). "It is the responsibility of the court to determine whether an ambiguity exists. If the contract does not require disentanglement of the language by a jury, i.e., the words used are plain and clear in their common usage, it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties." (Citation and punctuation omitted.) *Paces Partnership v. Grant*, 212 Ga. App. 621, 624 (2) (442 SE2d 826) (1994).

The common usage or popular sense can be determined by a dictionary. *Cotton States Mut. Ins. Co. v. Smelcer*, 212 Ga. App. 376, 377 (441 SE2d 788) (1994). "Acquire" is defined as "[t]o gain possession of." The American Heritage Dictionary (2nd ed., 1985), p. 75. "Ownership" is defined as "1. [t]he state or fact of being an owner [and] 2. [l]egal right to the possession of a thing." Id. at 888. The verb "own" is defined as "[t]o have or possess." Id.

The policy must be construed liberally in favor of the insured and strictly against the insurer whose experts and legal advisers prepared it. *Kytle v. Ga. Farm &c. Ins. Co.*, 128 Ga. App. 109, 112 (1) (195 SE2d 787) (1973); see *Clark v. United Ins. Co. of America*, 199 Ga. App. 1, 5 (4) (404 SE2d 149) (1991). So construing it and considering the common understandings of the words set out above, we conclude, as did the trial court, that the paragraph as a whole was ambiguous, but did not require consideration by a jury. Applying the rules of construction, the trial court determined and we agree that the legal right to possession of the helicopter was what was meant by the newly acquired aircraft clause stated above, whether that was the first or second time that right to possession had been enjoyed. Therefore, when Silver Hawk's sublease terminated, Prestige acquired the right to possess N-2589X under its lease with Carroll, the legal title holder, to the exclusion of the lienholder bank or anyone else and the clause was triggered.

We are not persuaded by the foreign authority relied upon by National, and the Georgia authority cited is all distinguished by the policy language used or the particular facts of each case. See *Lumbermens Mut. &c. Co. v. Commercial &c. Co.*, 155 Ga. App. 908 (273 SE2d 649) (1980); *Ga. Mut. Ins. Co. v. Criterion Ins. Co.*, 131 Ga. App. 339 (206 SE2d 88) (1974); *LaSalle Nat. Ins. Co. v. Popham*, 125 Ga. App. 724, 730 (2) (188 SE2d 870) (1972).

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

Decided May 3, 1995.

*Bovis, Kyle & Burch, Steven J. Kyle, William S. Allred,* for appellant.

*Gleaton, Scofield, Egan & Jones, E. Clayton Scofield III, Glenville Haldi,* for appellees.