## A97A0443. GRANGE MUTUAL CASUALTY COMPANY
## v. DeMOONIE.
### (490 SE2d 451)

ANDREWS, Chief Judge.

Grange Mutual Casualty Company (Grange) appeals from the judgment entered on the jury's verdict in favor of DeMoonie, the named insured under a homeowners insurance policy issued by Grange. Grange denied coverage, contending that DeMoonie was required to reside in the insured premises and did not at the time of the intentionally set fire,[1] which substantially damaged the house, and that the property had been vacant for more than 30 days, precluding coverage under the policy.

1. Although Grange's brief specifies seven enumerations of error while only two argument headings are contained in the brief, we exercise our discretion to consider the two main arguments presented, to the degree that we discern the enumerated errors discussed.[2] *Finch v. Brown,* 216 Ga. App. 451, 452 (454 SE2d 807) (1995); *McHaffie v. Decatur Fed. Sav. &c. Assn.,* 214 Ga. App. 368, 369 (448 SE2d 36) (1994).

2. Grange complains of the denial of its motion for summary judgment on the issues of the residency and vacancy clauses. The trial court denied the motion, and immediate review was denied by this Court. The same grounds were raised by motions for directed verdict at trial, which were also denied. " 'After verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case.' (Citations and punctuation omitted.) *Brown Realty Assoc. v. Thomas,* 193 Ga. App. 847 (1) (389 SE2d 505) (1989)." *Dept. of Transp. v. Brown,* 218 Ga. App. 178, 179 (1) (460 SE2d 812) (1995). We do, however, consider the denial of the motions for directed verdict. OCGA § 9-11-50 (a).

3. The standard for review of denial of a motion for directed verdict requires Grange to show that there was no conflict in the evidence as to any material issue and "the evidence introduced, with all reasonable deductions therefrom," demanded the verdict sought. OCGA § 9-11-50; *Pendley v. Pendley,* 251 Ga. 30 (1) (302 SE2d 554) (1983). Construing the evidence in favor of DeMoonie, the party opposing the motion for directed verdict, *Mattox v. MARTA,* 200 Ga. App. 697 (1) (409 SE2d 267) (1991), it was that DeMoonie had previously lived for a number of years with her former husband in the

---

[1] Although Grange contended that DeMoonie was responsible for the arson, it was unable to prove these allegations. No one had been charged with the arson at the time of trial.

[2] No argument is presented regarding the third enumeration, and it is deemed abandoned. Court of Appeals Rule 27 (c) (2).

Dunbar Road residence shown on the declarations page of the policy. After divorcing him, however, she moved from Dunbar Road and began renting the house. In 1993, the Jordans rented the house for a number of months until they moved out around the third week of October 1993. DeMoonie then attempted to rent the house "to sell." The Campbells were going to sign papers on the house on December 9, 1993, but the house burned on December 8, 1993. At that time, DeMoonie was living in a house she owned on Carolina Avenue.

(a) " 'An insurance contract is governed by the ordinary rules of construction and should be construed to ascertain the intention of the parties. [Cits.] In discovering the intent of the parties, the whole instrument should be considered together, along with the surrounding circumstances. [Cit.]' *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838 (1) (413 SE2d 430) (1992)." *Nat. Union Fire Ins. Co. &c. v. Prestige Helicopters*, 217 Ga. App. 375, 376 (457 SE2d 587) (1995). A contract of insurance should be construed by the court where the language is undisputed but the meaning of that language is in dispute. OCGA § 13-2-1; *Enterprise Financial Corp. v. Ross White Enterprises*, 212 Ga. App. 318, 319 (1) (441 SE2d 805) (1994).

The motion for directed verdict regarding residency was premised primarily on the definitions section of the policy. That section is, in pertinent part, as follows: "6. **'Insured premises'** means (a) the **residence premises**; (b) any other premises acquired by **you** during the term of this policy which **you** intend to use as a **residence premises**; (c) the part of any other premises where **you** reside and which is shown in the Declarations; (d) part of a premises not owned by an **insured person** where the **insured person** may be temporarily residing. . . . 10. **'Residence premises'** means the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds and which is described in the Declarations."

Considering the entire contract, we note the declarations page which shows the "Named Insured and Address Jennie C DeMoonie 501 Dunbar Road . . . ," and states that "[t]hese declarations with policy provisions, applications, forms, and endorsements, if any, are issued to form and complete the above numbered policy." Immediately following is this paragraph: "The premises covered by this policy is located at the above address. Rating information-dwelling number 0, the *owner occupied primary residence*. . . ." (Emphasis supplied.)

"The declaration page of the policy of insurance constitutes a part thereof and the provisions therein must be construed with the remainder of the insurance contract. [Cits.]" *McGee v. Southern Gen. Ins. Co.*, 194 Ga. App. 783, 784 (391 SE2d 669) (1990).

The trial court, in denying the motion for directed verdict, relied

upon *Hill v. Nationwide &c. Ins. Co.*, 214 Ga. App. 715 (448 SE2d 747) (1994) and found an ambiguity in the Grange policy based on the policy's exclusions section. That section provides that "[w]e do not cover loss resulting directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . . 5. Freezing of plumbing, heating or air conditioning systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant or unoccupied unless *you* take precautions to: (a) shut off the water supply and drain the systems and appliances; or (b) maintain heat in the building. . . . Under Dwelling and Other Structures Coverages, *we* do not cover loss resulting directly from: . . . 4. vandalism or malicious mischief, including intentionally set fires, if the dwelling has been vacant for more than 30 consecutive days immediately preceding the loss." (Emphasis in original.)

Such exclusions from coverage do not negate the requirement that the insured reside in the insured premises.

First, the definition of "residence premises" in the policy at issue in *Hill* is different from that of the Grange policy. The Grange language is much more similar to and, we conclude, controlled by *Epps v. Nicholson*, 187 Ga. App. 246 (370 SE2d 13) (1988). There, as here, the definition of residence premises required residence by the insured and listing of the premises on the declarations page.

We also disapprove of the strained reading of the exclusions provisions in *Hill* to create an "exception to the exclusions" which provides coverage for rental property not otherwise provided by the policy. Such a reading "ignores the whole for an overly strict consideration of each part standing alone." *Edwards v. Atlantic Ins. Co.*, 203 Ga. App. 608, 609 (1) (417 SE2d 410) (1992).

" 'When the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one *reasonable* construction, the courts must expound the contract as made by the parties. Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage.' . . . [Cit.]" *Southern Fire &c. Co. v. Jamerson*, 223 Ga. App. 582, 583 (1) (479 SE2d 404) (1996). Under Georgia law, an insurance company may, by contract, limit the risks against which it insures, so long as the terms of the policy are not contrary to Georgia law. *Capitol Indem. Corp. v. L. Carter Post 4472 VFW*, 225 Ga. App. 354, 355 (484 SE2d 52) (1997).

Looking at the policy as a whole, we conclude that it is governed by *Epps*, supra, rather than *Hill* and that the definition of "residence premises" is in no way ambiguous, nor does it conflict with the exclu-

sions section. Compare *Roland v. Ga. Farm Bureau Mut. Ins. Co.*, 265 Ga. 776, 777 (1) (462 SE2d 623) (1995) with *Ga. Farm Bureau Mut. Ins. Co. v. Kephart*, 211 Ga. App. 423, 424 (1) (439 SE2d 682) (1993).

Therefore, Grange was entitled to a directed verdict based on the residency requirement of the policy.

(b) Also included as a basis for the motion for directed verdict was the intentionally set fire exclusion referenced above, which states: "[w]e do not cover loss resulting directly or indirectly by . . . vandalism or malicious mischief, including intentionally set fires, if the dwelling has been vacant for more than 30 consecutive days immediately preceding the loss."

Having concluded that Grange was entitled to a directed verdict premised on the residency requirement, we need not address Grange's alternative basis premised on this clause. OCGA § 5-6-34 (d).

*Judgment reversed. Beasley, J., concurs. Smith, J., concurs in the judgment only.*

DECIDED JULY 16, 1997 —
RECONSIDERATION DENIED JULY 31, 1997 —

*Simpson, Gray & Cross, Ralph F. Simpson, Melanie Barbee-Cross*, for appellant.

*Williams, Sammons & Sammons, Walter G. Sammons, Jr.*, for appellee.