[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 4, 2011
JOHN LEY
CLERK

No. 11-12027
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00174-TWT

RYAN MAHENS,

Plaintiff-Appellant,

versus

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 4, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Ryan Mahens, proceeding *pro se*,[1] appeals the district court's grant of

_____

[1] While Mahens filed the instant appeal *pro se*, all of his pleadings in the district court have been counseled.

summary judgment in favor of Allstate Property and Casualty Insurance Company ("Allstate") in his diversity lawsuit alleging a breach of an insurance contract. For the reasons stated below, we affirm.

## I. FACTS

Mahens purchased a house in Marietta, Georgia, and insured it through Allstate's home insurance policy.[2] He never moved into the house and never resided there; in fact, the policy declarations section indicated that Mahens's mailing address was in Florida. However, Mahens hired Laura Restrepo to manage the property for him, and, for some time, the house was used by Restrepo's relatives and other tenants. At some point, Restrepo and Mahens decided to renovate the property and sell it, leaving the house unoccupied. Restrepo's acquaintance, Clifford Ochemba, would occasionally visit the property to assess the status of the renovations and to show the house to prospective buyers.

---

[2] The policy described the covered property as "Your dwelling including attached structures." The term "dwelling" was defined as "a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence." The policy contemplated occasions where the insured property is unoccupied. For example, the policy did not cover damage caused by frozen plumbing while the building stood vacant, unless heat was maintained on the property, and the policy also excluded coverage for vandalism or malicious mischief occurring more than 30 days after the property became unoccupied. Regarding any changes in coverage, the policy provided: "When Allstate broadens coverage during the premium period without charge, you have the new features if you have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement."

In March 2009, approximately eight months after the house became vacant, it was discovered that a water leak occurred on the property and caused substantial damage.

At first, Allstate questioned its liability, but approximately two weeks after the discovery of the leak, Allstate sent an independent claims adjuster, Irving Emmert, to the property to inspect the damage. While there, Emmert met with Restrepo, Ochemba, and Shannon Allred, a representative of Integrity Renovation & Remodeling, Inc. ("Integrity"). According to Mahens, Emmert introduced himself as Allstate's representative, made recommendations regarding the necessary repair work, assured Restrepo that Allstate would pay for the repairs, and told Allred to bill Allstate directly.[3] Restrepo signed a form authorizing Integrity to commence repair work on the property and to bill Allstate directly. The form warned that the customer bore responsibility for all charges not reimbursed by the insurance company.

On March 30, 2009, after substantial repair work had been done on the house, Restrepo received a letter from Allstate, advising her that she would receive a check for $42,366, the amount payable under the policy. However, in June

---

[3] Emmert testified at his deposition that he never authorized Integrity to commence work on the property and never indicated that Allstate would pay for the repairs.

3

2009, Allstate informed Restrepo that it would not honor the claim, despite the letter. Allstate also sent an e-mail to Restrepo, stating that it would settle with Integrity for $15,000, provided that Mahens sign a waiver releasing Allstate from all liability. Neither Restrepo nor Mahens signed the release waiver.

Subsequently, Mahens filed a lawsuit against Allstate, alleging a bad-faith breach of the insurance contract, and Allstate removed the suit to federal court pursuant to 28 U.S.C. § 1332. After discovery, Allstate moved for summary judgment, arguing, among other things, that its policy did not cover the water damage to Mahens's property because he did not reside there, as required by the terms of the policy. Mahens also moved for summary judgment, contending that the policy did not require him to reside on the property, that principles of waiver and estoppel precluded Allstate from denying coverage based on non-residency, and that Allstate acted in bad faith.

The district court granted summary judgment to Allstate and denied the same to Mahens. It found, in relevant part, that Allstate's policy did not cover Mahens's property because he did not reside there; that a waiver of the residency requirement could be accomplished only through endorsement, which was lacking in this case; that principles of implied waiver and estoppel under Georgia law could not be used to waive the residency requirement, as doing so would expand

4

coverage to include risks not covered by the policy; and that Allstate did not act in bad faith, having reasonable grounds on which to deny coverage. The instant appeal followed.

## II. ANALYSIS

Mahens raises three main issues on appeal.[4] First, he argues that he had satisfied the residency requirement of Allstate's policy because his absence was only temporary, and, in any event, the residency provision of the policy was ambiguous and should have been construed against Allstate. Second, Mahens contends that Allstate's actions waived the residency requirement and estopped it from denying coverage. Finally, he asserts that Allstate acted in bad faith by refusing to pay his insurance claim.

We review "the granting of summary judgment *de novo*, and the district court's findings of fact for clear error." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010). A district court shall grant summary judgment "if the

---

[4] Mahens also raises two claims that are not subject to our review. Specifically, he argues that he had actually settled the insurance claim with Allstate, and its letter promising to send a check for $42,366 evidenced the settlement agreement. Mahens also argues that the doctrine of promissory estoppel precluded Allstate from denying coverage because, acting through Emmert, Allstate promised to pay for the repairs, and Mahens relied on this promise to his detriment. We decline to review these claims because Mahens did not raise them before the district court, and no exceptions warrant a review of these claims for the first time on appeal. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331-32 (11th Cir. 2004) (stating that this Court does consider claims raised for the first time on appeal and describing five circumstances where an exception to this principle might apply).

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If the movant satisfies the burden of production showing that there is no genuine issue of fact, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted). "We draw all factual inferences in a light most favorable to the non-moving party." *Id.* Nevertheless, the non-moving party cannot create a genuine issue of material fact through speculation, *id.*, or evidence that is "merely colorable" or "not significantly probative," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## A. Residency Requirement

Under Georgia law, "[n]o construction of an insurance contract is required or even permissible when the language is plain, unambiguous, and capable of only one reasonable interpretation." *Ga. Farm Bureau Mut. Ins. Co. v. Kephart*, 439 S.E.2d 682, 683 (Ga. App. 1993). However, an insurance contract "should be construed by the court where the language is undisputed but the meaning of that language is in dispute." *Grange Mut. Cas. Co. v. DeMoonie*, 490 S.E.2d 451, 453 (Ga. App. 1997). "Like any other contract, an insurance policy must be construed

6

according to its plain language and express terms." *Kephart*, 439 S.E.2d at 683.

Moreover, the policy "should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *Banks v. Bhd. Mut. Ins. Co.*, 686 S.E.2d 872, 874 (Ga. App. 2009) (quotation omitted).

The insurance policy issued by Allstate defined the covered premises as "Your dwelling including attached structures." The term "dwelling" meant "a one, two, three or four family building structure, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence." This language plainly and unambiguously required Mahens to reside at the property listed on the policy. In fact, the Georgia Court of Appeals has previously construed similar language to require residency. *See Kephart*, 439 S.E.2d at 683 (determining that a residency requirement existed where the insurance policy defined the covered "residence premises" as "the one family dwelling, other structures, and grounds; or . . . that part of any other building; where you reside"); *DeMoonie*, 490 S.E.2d at 453-54 (concluding that a residency requirement existed where the policy defined the covered premises as "the one or two family dwelling where you reside").

It is true that Allstate's policy contemplated temporary absences by specifically excluding certain risks during times of vacancy, such as frozen pipe

damage or vandalism. However, the record clearly shows that Mahens had never resided at the property and that his absence was not temporary. Moreover, the aforementioned exclusions did not make Allstate's policy ambiguous or contradictory, such as to negate the residency requirement. *See DeMoonie*, 490 S.E.2d at 453 (stating that provisions in a policy excluding specific items from coverage in the event of vacancy "do not negate the requirement that the insured reside in the insured premises). Because Mahens did not fulfill the residency requirement of Allstate's policy, his house was excluded from coverage.

## B. Waiver and Estoppel

Mahens points to four actions by Allstate that could have waived the residency requirement or estopped it from denying coverage: (1) Allstate mailed the policy documents to Mahens's address in Florida, implying knowledge that he did not reside at the insured property; (2) Allstate's agent, Emmert, told Restrepo that Allstate would pay for the repairs to the property; (3) Allstate sent a letter indicating that it would issue a check for $42,366 to cover the repairs performed by Integrity; and (4) Allstate tried to settle with Integrity for $15,000.

To begin, Allstate's attempt to settle with Integrity could not have waived the residency requirement of the policy, as Georgia law specifically provides that an insurer's "engaging in negotiations looking toward a possible settlement of any

8

loss or claim," shall not be deemed "to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy." O.C.G.A. § 33-24-40(3).

Allstate's other actions also did not result in waiver or estoppel. In *Fire & Cas. Ins. Co. of Conn. v. Fields*, 96 S.E.2d 502, 503-04 (Ga. 1957), the insurance policy in question contained a residency requirement, as well as a provision that all waivers or changes to the policy must be made in writing. *Id.* at 503. The insurer's agent knew that the insured property was vacant, but received a premium from the insureds and informed them that their property was covered despite the vacancy. *Id.* The Georgia Supreme Court held that the agent's knowledge regarding the vacancy and his oral assurances that the property was covered did not estop the insurer from asserting a breach of the residency condition, and the insurer's continued receipt and retention of premiums did not prevent it from relying on the written-waiver requirement. *Id.* at 504; *see also Am. Mut. Fire Ins. Co. v. Durrence*, 872 F.2d 378, 379 (11th Cir. 1989) (holding that, despite the insurer's knowledge that the insured property was vacant, and despite the agent's assurances that the property was covered, the insurer was not estopped from denying coverage based on a lack of residency because, under Georgia law, "oral assurances of waiving policy terms do not estop the insurer from relying on the defense of a written-waiver requirement" where the insured had possession of

9

the policy). Moreover, it is "well-established . . . that the doctrines of implied waiver and estoppel, based upon the conduct or action of the insurer, or its agent, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." *Danforth v. Gov't Emps. Ins. Co.*, 638 S.E.2d. 852, 858-59 (Ga. App. 2006) (quotations and alteration omitted).

In this case, Allstate's policy provided that, "[w]hen Allstate broadens coverage during the premium period without charge, you have the new features if you have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement." Nothing in the record suggests that Allstate broadened its insurance coverage during Mahens's premium period to include unoccupied dwellings, and Mahens points to no evidence that Allstate issued any endorsement waiving the residency requirement. Furthermore, waiving the residency requirement would expand Allstate's coverage to include a risk not covered by the policy's terms, namely, a risk that a problem occurring in a vacant building, such as a leak, would go unnoticed and cause extensive damage that otherwise could have been prevented through prompt attention. Accordingly, Allstate was not estopped from denying coverage based on non-residency, even though it mailed policy documents to Mahens's Florida address, orally assured Restrepo (through Emmert) that it would pay for the repairs, and sent a letter indicating that a check

10

for the repairs was forthcoming. *See Fields*, 96 S.E.2d at 503-04; *Durrence*, 872 F.2d at 379; *Danforth*, 638 S.E.2d. at 858-59.

## D. Bad Faith

To establish a claim of bad faith on the part of the insurer under Georgia law, "the insured must prove two conditions: (1) that a demand for payment was lodged against the insurer at least 60 days prior to filing suit and (2) that the insurer's failure to pay was motivated by bad faith." *Primerica Life Ins. Co. v. Humfleet*, 458 S.E.2d 908, 910 (Ga. App. 1995); O.C.G.A. § 33-4-6. "A refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there are any reasonable grounds for an insurer to contest the claim, there is no bad faith." *Swyters v. Motorola Emps. Credit Union*, 535 S.E.2d 508, 510 (Ga. App. 2000) (quotation omitted).

Mahens cannot prevail on a bad-faith claim. As described above, his property was not covered by the insurance policy because he did not reside there. Therefore, Allstate had reasonable grounds for denying coverage and could not have acted in bad-faith by doing so. *See Swyters*, 535 S.E.2d at 510; *Collins v. Life Ins. Co. of Ga.*, 491 S.E.2d 514, 517 (Ga. App. 1997) (holding that the insurer did not act in bad faith by refusing to pay for a benefit that was clearly not covered by the insurance contract).

11

Having reviewed the record and the parties' briefs, we conclude that the district court did not err in granting summary judgment to Allstate and denying summary judgment to Mahens.  Accordingly, we affirm.

**AFFIRMED.**