IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 21, 2020 Session

## ROBERT F. CLARK v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal from the Chancery Court for Jefferson County**
**No. 16-CV-61          David R. Duggan, Judge**

_____

**No. E2019-00746-COA-R3-CV**

_____

This appeal arises from an action filed by Robert F. Clark ("Plaintiff"), seeking a declaratory judgment and damages against Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"). Plaintiff applied for a homeowner's insurance policy with Tennessee Farmers upon his purchase of improved real property. The effective date of the policy was to begin on May 29, 2013, the original date of the closing for the sale of the property. The closing of the real property was rescheduled to an earlier date. A leak occurred after the actual closing on the property but before the date of the original closing and the stated effective date of the homeowner's insurance policy. Determining that Tennessee Farmers had not been notified of the change and that Plaintiff had signed an authorization for work on the property, the Trial Court granted Tennessee Farmers' motion for summary judgment. We affirm the Trial Court's finding that the leak occurred prior to the effective date of the policy. However, we reverse the Trial Court's grant of summary judgment upon our determination that genuine issues of material fact exist to preclude summary judgment on other issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Douglas E. Taylor, Seymour, Tennessee, for the appellant, Robert F. Clark.

John T. Johnson, Jr., and Brandon L. Morrow, Knoxville, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

# OPINION

## Background

Plaintiff purchased improved real property in Jefferson County, Tennessee ("the Property"). The closing date regarding the sale of the Property initially was scheduled for May 29, 2013, but was rescheduled to May 24, 2013, at the request of the sellers. Prior to the rescheduling of the closing on the Property, Plaintiff had applied for homeowner's insurance with Tennessee Farmers with the effective date for the policy to begin on May 29, 2013. After the closing on May 24, 2013, but before the effective date of insurance on May 29, 2013, the home had a water leak that caused damage to the Property. On May 26, 2013, Plaintiff contracted with ServPro of Sevier, Jefferson, and Cocke Counties ("ServPro") to remove the water from the Property. This project was a one-day job, and Plaintiff signed an authorization for the performance of this work.

Plaintiff filed an insurance claim with Tennessee Farmers. Plaintiff alleged that following the claim, Tennessee Farmers authorized ServPro to return to the Property on May 28, 2013, to begin demolition on the Property. Tennessee Farmers does not dispute for purposes of its summary judgment motion that it authorized ServPro to perform work on the Property. According to Plaintiff's complaint, Plaintiff did not sign an authorization regarding this work, and only the representative from Tennessee Farmers authorized this work. Plaintiff argued that he had authorized only the initial water removal from the Property. ServPro began demolition on the Property but ceased work when notified by Tennessee Farmers that the insurance claim would not be covered by insurance. Tennessee Farmers averred that Plaintiff's insurance policy regarding the Property began on the date of the original closing, which was days after the damage to the Property occurred. The Property remained damaged, and ServPro issued an invoice for the work completed before it was discontinued in the amount of $13,881.96.

In June 2016, Plaintiff filed a complaint for a declaratory judgment and damages against Tennessee Farmers and First Tennessee Bank, alleging breach of contract; misrepresentation; fraud; fraudulent concealment; bad faith refusal to pay a legitimate insurance claim, pursuant to Tennessee Code Annotated § 56-7-105; deceptive and unfair business practices in violation of the Tennessee Consumer Protection Act, and conspiracy or constructive fraud. In his complaint, Plaintiff alleged that he had relied on the representation of the First Tennessee Bank representative who had been responsible for dispersing funds for the closing and had agreed to make any necessary administrative changes to give full effect to the parties' contract. According to the complaint, Tennessee Farmers "avers it was not notified by the Bank, or more likely it simply failed to make the changes requested, given that the settlement statement acknowledges payment to the Insurance Company and a Policy Number issued." Plaintiff stated that "[e]ither the statements of the Bank were false or the Insurance Company failed to perform the

requirements of the transaction." Plaintiff further alleges that "payment of $839.00 was issued to [Tennessee Farmers] for Policy Number HP44-08176, upon the actual closing date of May 24, 2013 . . . and before the claim for damages to the house by the Plaintiff." Plaintiff attached to his complaint the settlement statement from the closing on the Property, which reflected a closing date of May 24, 2013, and a settlement charge for homeowner's insurance in the amount of $839.00 to Tennessee Farmers. The settlement statement also provided as follows: " You do not have a monthly escrow payment for items such as property taxes and homeowner's insurance. You must pay these items directly yourself."

Tennessee Farmers filed an answer denying any wrongdoing by Tennessee Farmers and stated that neither the bank nor Plaintiff had informed it that the closing had been rescheduled and that it did not receive the check for the premium until May 31, 2013. Tennessee Farmers presented as a defense that the water leak occurred on May 26, 2013, and there is no coverage for the loss because the coverage was not in effect at the time of the damage to the Property.

Plaintiff filed a motion for summary judgment in December 2016, which included substantially the same allegations as the complaint. The Trial Court subsequently denied the motion through its order entered in February 2017. Additionally, Tennessee Farmers filed its first motion for summary judgment, which the Trial Court then denied upon its determination that an issue of material fact existed as to whether Plaintiff notified Tennessee Farmers of the change in the closing date.

First Tennessee Bank filed a motion for summary judgment and memorandum of law in support thereof, alleging that "it was Plaintiff's responsibility – not First Tennessee's – to ensure the Property was covered against loss" and that Plaintiff's reliance on the bank's "alleged (and vague) statement that 'everything is taken care of' in connection with the rescheduled closing date was unreasonable as a matter of law." The Trial Court granted First Tennessee's motion for summary judgment upon determining that "First Tennessee acted as a lender only in connection with the purchase and sale transaction that is the subject matter of this case" and that "[t]he loan documents are clear that First Tennessee had no duty to purchase or maintain insurance on the Plaintiff's residence."[1]

In June 2018, Tennessee Farmers filed their second motion for summary judgment alleging that Plaintiff's deposition testimony established that Plaintiff had not notified Tennessee Farmers of the earlier closing date or asked Tennessee Farmers to change the policy effective date from the original date of May 29, 2013. Although Plaintiff's

---

[1] The Trial Court's order granting summary judgment in favor of First Tennessee Bank is not at issue in this appeal.

affidavit stated that he met with the insurance agent, David Haston, prior to the closing to inquire whether any changes needed to be made since the closing date had been set, Plaintiff's deposition testimony reflected that he had not notified anyone at Tennessee Farmers of the change in date for the closing. Plaintiff's affidavit stated that a representative from the bank showed Plaintiff a document reflecting that Tennessee Farmers had been notified of the change.

In addition to its motion, Tennessee Farmers attached a memorandum of law in support of its motion; statement of material facts; an affidavit of Joseph Brzozowski, the Regional Claims Manager with Tennessee Farmers; the deposition testimony of Plaintiff; the deposition testimony of Teresa Serdinsky, Plaintiff's daughter; a declaration by David Haston, a representative of Tennessee Farmers; and the transcript from the motion hearing concerning Tennessee Farmers' first summary judgment motion. In its memorandum of law, Tennessee Farmers states as follows:

> [A]ll claims against Tennessee Farmers fail for the same reason: Tennessee Farmers was never put on notice, not by Plaintiff nor anyone else, that the effective insurance policy date should be changed to match the earlier closing date. Without this key fact, Plaintiff cannot establish that [Tennessee Farmers] had any duty to Plaintiff, under either tort or contract, to change the effective policy dates. [Tennessee Farmers] is entitled to summary judgment.

(Internal citations omitted.)

The Trial Court heard the matter on two nonconsecutive days in August and November 2018. Between the court hearings, both Plaintiff and Tennessee Farmers filed supplemental briefs in support of their position regarding the pending summary judgment motion. In its November 2018 order, the Trial Court granted Tennessee Farmers' second summary judgment motion and incorporated its findings of fact included in the hearing transcript. During the November 2018 motion hearing, the Trial Court specifically found the following findings of fact:

> [Number 1:] Tennessee Farmers Mutual Insurance Company issued a policy of insurance to Plaintiff for the subject improved real property located at **** Lisa Circle, Strawberry Plains, Tennessee; 37871; bearing policy number 44.08176.
>
> Number 2: That policy did not take effect until May 29, 2013. This effective date of coverage is listed on both the application for insurance bearing the Plaintiff's signature and the policy's declarations page. In finding that fact, it is noted that Plaintiff has denied that statement of fact.

- 4 -

However, Plaintiff hasn't really contested any of the facts as stated. What Plaintiff has said is that Mr. Clark was allegedly shown a document indicating that [Tennessee Farmers] was informed of an earlier closing date. The Plaintiff, however, has been unable to offer any proof, including any such document that would suggest that Tennessee Farmers was informed of the earlier closing date. And, of course, Tennessee Farmers' representative in his affidavit says that they were not informed; and there is no evidence before this Court that Tennessee Farmers was ever notified that the closing had been moved up 5 days and that therefore the policy needed to have a different revised effective date.

Number 3: The original closing date was scheduled for May 29, 2013.

Number 4: Plaintiff, however, actually closed on the subject improved real property on May 24, 2013.

Number 5: Tennessee Farmers did not receive the premium payment for Plaintiffs policy until May 31. Again, in finding that fact, Plaintiff denies that statement of fact but in doing so says only that at that time, at the time of the denial, a certain deposition had not yet been taken and they wanted the opportunity to take that deposition. But there has been no proof submitted to the Court of anything other than the fact that the premium payment was not received until May 31, of 2013. Which would have been consistent with Tennessee Farmers believing that the closing took place on May 29.

Number 6: Plaintiff did not notify Tennessee Farmers of the earlier May 24, 2013 closing date.

Number 7: Plaintiff's daughter, Teresa Serdinsky, did not notify Tennessee Farmers of the earlier May 24, 2013 closing date.

Number 8: Plaintiff does not believe that the agent, Mr. Haston, or anyone at Tennessee Farmers provided him with false information regarding his insurance claim.

Number 9: At no time was Mr. Haston notified by Mr. Clark or anyone else that the closing on the property at **** Lisa Circle had been moved from May 29, 2013 to May 24, 2013. Now, again, in finding that fact it's noted that the Plaintiff denies that statement of fact. However, the

- 5 -

denial is once again based upon an allegation of allegedly being shown some document which has not been provided to the Court.

Number 10: . . . At no time was Mr. Haston requested by Mr. Clark or anyone else to change the beginning of the policy period from May 29, 2013 to another date.

The Court finds, Number 11, that no misrepresentations were made by Tennessee Farmers. An unfortunate mistake was made. The Plaintiff changed his closing date but unfortunately no one informed Tennessee Farmers. Tennessee Farmers, in good faith, issued its policy effective the only date it knew, May 29, 2013. And the loss for which a claim was later made pre-dates the effective date of the policy by 5 days.

Number 12: As for the argument that Tennessee Farmers authorized ServPro to do the work, Plaintiff signed an authorization to perform services in direction of payment with ServPro which stated "It is fully understood that customer and its agents, successors, assigns, and heirs are personally responsible for any and all deductible and any costs not covered by insurance. Customer agrees that provider is working for the customer and not customer's insurance company or any agent or adjuster." And that was agreed to in the deposition, and that language was referred to in the Plaintiff's deposition on page 41. And, apparently, it was Exhibit-3 to that deposition.

* * *

[Number 13:] Teresa Serdinsky testified that she contacted ServPro about performing the work before she ever spoke to anyone at Tennessee Farmers.

The Trial Court continued with its legal analysis:

Turning to the law, of course, the 11th Circuit case that has been cited is not binding upon the Court. But, apparently, we've been unable to find any Tennessee law addressing the question of whether it makes any difference that Tennessee Farmers authorized ServPro to go out and begin the work prior to determining, or making a determination, that in fact the loss preceded the date of the policy.

The Court considers this 11th Circuit case to be persuasive authority for the propositions that mistaken representations about coverage by an

- 6 -

agent of the insurance company did not prevent the insurer from applying the clear terms of the policy to deny coverage. And in that 11th Circuit case, the facts were even more egregious than here for several reasons. In that case, Allstate's representative made recommendations regarding the necessary repair work, assured Plaintiff that Allstate would pay for the repairs, and told Plaintiff's representative to . . . deal with Allstate directly. Plaintiff signed a form authorizing a remediation company to commence repair work on the property, and to bill Allstate directly.

Now, that form had similar language to the one present here that warned the customer that the customer would bear responsibility for all charges not reimbursed by the insurance company. But in that case, in the 11th Circuit, after substantial repair work had been done on the house, Plaintiff received a letter from Allstate advising that she would actually receive a check for $42,366.00; the amount payable under the policy. It was only then, apparently, that Allstate realized that they had a coverage defense, and the next month Allstate informed Plaintiff that it would not honor the claim based on the residence requirement in the policy. Now that was a residency issue. It was not an effective date issue.

And I think the facts of that case present, as Defendant has argued, even a more compelling case for coverage than we have here. Yet the 11th Circuit applied the clear terms of the policy to deny coverage. I think it also serves public policy that an insurance company, in an effort to try to provide coverage when coverage is due and owed, to try to act quickly on claims; and should not, when it's acting in good faith, forfeit because it tries to act quickly to help its insured from being able to say, "Wait a minute, there's no coverage here. We didn't realize that at first, but this loss pre-dates the date of the policy."

In this case, Plaintiff was on notice, again as I've already said in the Findings of Fact, that he might be responsible for the work performed by ServPro by signing that authorization. And Teresa Serdinsky testified that she contacted ServPro about performing the work before she ever spoke to anyone at Tennessee Farmers. By the way, I'm going add that, commenting on the law, I also want to add that as a 13th Finding of Fact. Based on her deposition testimony that Teresa Serdinsky testified that she contacted ServPro about performing the work before she ever spoke to anyone at Tennessee Farmers.

I just don't think that it is the case, and I agree with Defendant that a mistake in authorization to perform repairs when made in good faith,

- 7 -

somehow alters the unambiguous effective date of the insurance contract. Here, once again, there was a very unfortunate mistake. Everybody thought the closing was going to be on May 29. Tennessee Farmers was asked to insure the property. They agreed to do that. They issued a policy in good faith effective May 29, based upon the representations made to the company about the date of the closing. And unfortunately two things happened. Number 1, nobody notified Tennessee Farmers that the closing was moved up 5 days to May 24. And Number 2, unfortunately the loss pre-dated the effective date of the policy.

I believe that [Tennessee Farmers] has negated essential elements of the Plaintiff's claim and that the Plaintiff cannot prove the claim and that there is no genuine issue of material fact. And, so, I'm going to grant [Tennessee Farmers'] Motion for Summary Judgment.

In December 2018, Plaintiff filed a motion to alter, amend and/or reconsider the Trial Court's grant of summary judgment in favor of Tennessee Farmers. Thereafter, the Trial Court entered an order in March 2019, awarding Tennessee Farmers discretionary costs. Following a hearing on Plaintiff's motion to alter, amend and/or reconsider conducted in February 2019, the Trial Court entered an order in April 2019, denying Plaintiff's motion. In its April 2019 order, the Trial Court incorporated by reference the oral ruling in the transcript from the February 2019 motion hearing. The transcript provides the Trial Court's ruling as follows:

Well, it remains my impression of this case that it's the sad set of facts in one respect. But the simple reality is that Tennessee Farmers agreed to insure this property based on a closing dated of "X". They were told, Tennessee Farmers was told, that this closing was going to take place on a certain date; and they agreed to insure the property as of that date. They were paid for the insurance policy and they issued the policy. But it had an effective date based on the closing date that was communicated to Tennessee Farmers. And nobody bothered to tell Tennessee Farmers that the closing date had changed. It's not Tennessee Farmers fault. They issued the policy in good faith, effective the date that they were told the closing was going to take place. And the other parties, other than Tennessee Farmers, decided to change the closing date but nobody bothered to tell Tennessee Farmers. And, so, their policy was issued with an effective date. And, unfortunately, the loss occurred prior to the effective date. And, so, I just - it remains my position that Tennessee Farmers has negated the essential element of the Plaintiff's case, and that the Plaintiff cannot prove its case, and that there's no genuine issue of material fact, and that Tennessee Farmers in entitled to a Summary

Judgment. And the only other argument that was offered was, "Well, what about the fact that Tennessee Farmers had asked this cleaning service to go in and start cleaning up the damage?" Well, they did. But I think that was without waiver of their right, once they discovered that the loss pre-dated the effective date of the policy, to say "I'm sorry, hold on. We're not going to clean this after all." And I still think that that case, that was not a Tennessee case, but I think it was persuasive authority. Because there the facts were even more egregious for the insurance company than anything that happened in this case. And I just feel like I made the right decision the first time. And, so, I'm going to respectfully deny the Motion to Alter, or Amend or Reconsider.

Plaintiff timely appealed the Trial Court's judgment to this Court.

## **Discussion**

Although not stated exactly as such, Plaintiff raises four issues for our review on appeal as follows: (1) whether the Trial Court erred by granting Tennessee Farmers' motion for summary judgment despite a genuine issue of material fact existing due to testimony that a representative of Tennessee Farmers authorized the work on the home, (2) whether the Trial Court erred by denying Plaintiff's motion to alter or amend upon its determination that Tennessee Farmers was not estopped from denying responsibility when a representative from Tennessee Farmers, and not Plaintiff, authorized the repair work on the home, (3) whether the Trial Court erred by relying on an out-of-state court decision as persuasive authority in this matter, and (4) whether the Trial Court erred by determining that the insurance policy became effective on the initially scheduled closing date instead of the actual date on which the closing occurred.

As our Supreme Court has instructed regarding the standard of review on motions for summary judgment:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of*

*Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\*\*\*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address whether the Trial Court erred in its determination that the policy effective date was the date of the originally scheduled closing and not the actual closing date. The initial closing date on Plaintiff's purchase of the Property was May 29, 2013. Plaintiff had contacted Tennessee Farmers to obtain a homeowner's insurance policy concerning the Property. The application for insurance reflected that the requested policy would begin on May 29, 2013. Thereafter, the sellers of the Property requested to move up the closing date to May 24, 2013. The closing date was, therefore, rescheduled to May 24, 2013, five days earlier than previously scheduled.

Although Plaintiff executed an affidavit stating that he had been shown a document reflecting that notice of the change in closing date had been provided to Tennessee Farmers, the Trial Court found that Mr. Haston had not been provided notice that the closing had been moved to an earlier date and that Plaintiff never requested that Tennessee Farmers modify the effective date of the policy to the actual closing date. The Trial Court acknowledged Plaintiff's allegations that he had seen a document reflecting that notice had been provided to Tennessee Farmers but found that Plaintiff had not submitted any such documentation proving notice to the Trial Court. Pursuant to our Supreme Court's holding in *Rye*, 477 S.W.3d at 265, Plaintiff, as the non-moving party, "must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." Without proof that Tennessee Farmers had been notified that the closing had been moved to an earlier date, the Trial Court did not err by finding that the effective date for the homeowner's policy was the original date of closing on May 29, 2013, and not on the actual closing date, which occurred earlier in time.

We next address whether the Trial Court erred by granting Tennessee Farmers' motion for summary judgment, denying Plaintiff's motion to alter or amend, and relying on persuasive authority. It is undisputed that on May 26, 2013, Plaintiff signed an agreement with ServPro to perform work on the Property. According to Plaintiff's affidavit, the May 26, 2013 agreement with ServPro was for the sole purpose of allowing ServPro to remove the accumulated water from the home. Plaintiff stated that it was a one-day job and that ServPro left the Property upon completion of the job.

ServPro later returned to the home on May 28, 2013, to begin demolition on the Property. However, there is at least a genuine question of who actually authorized the work to be performed on Plaintiff's home, which began on May 28, 2013. The Trial Court found that Plaintiff had signed an authorization form authorizing ServPro to perform work on the Property. The Trial Court further found that the authorization

provided that Plaintiff would be responsible for costs not covered by insurance and that the company is working for the customer, not the insurance company, agent, or adjuster. However, Plaintiff argues that the initial authorization form to which the Trial Court refers was for one day of work on May 26, 2013, which was completed; he did not sign an additional authorization for the subsequent work; and the work that was authorized and began on May 28, 2013, was authorized solely by a claims adjuster for Tennessee Farmers, Quint Webster. Plaintiff further stated that Mr. Webster informed him that he had authorized ServPro to place a dumpster on the Property to begin demolition on the Property. According to Plaintiff, he relied on Mr. Webster's representation and allowed ServPro to begin demolition, believing that Tennessee Farmers would pay for the work.

Alicia Burch, an employee of ServPro, executed an affidavit stating that she had corresponded with Quint Webster on May 28, 2013, concerning "the mitigation and tear out only" and that Mr. Webster had authorized ServPro to perform work on the Property. Ms. Burch also stated that ServPro performed work on the Property for approximately three weeks under the authorization of Mr. Webster and then ceased work on the Property at the direction of Tennessee Farmers.

Freda Green, also an employee of ServPro, executed an affidavit stating that she had "worked on the emails on May 28, 2013, concerning the mitigation/tear-out" to the Property. According to Ms. Green's affidavit, Mr. Webster, an employee of Tennessee Farmers, authorized ServPro to perform work on the Property on May 28, 2013. According to Ms. Green's affidavit, ServPro performed three weeks of work on the Property, upon the authorization of Mr. Webster, before being instructed to stop work on the Property by Tennessee Farmers. An email message from Ms. Green to Mr. Webster provided as follows:

> I'm in accounting at Servpro and I have been [in] a few discussions with the Clark's attorney regarding payment to Servpro.
>
> As you know, Servpro was called out by our corporate office on May 26, 2013 at 5:25 PM. Teresa Clark called our corporate office and requested Servpro's service for her father's (Robert Clark) water damage (not sure how Ms. Clark knew to call Servpro.)
>
> On 5-28-13 Alicia Burch talked to you and you ok'd for a dumpster to be put on job site. On 5-31-13, again, you approved for a second dumpster to be placed on job site. Servpro worked on this property for three weeks, gutted the house and then on 6-18-13, Servpro gets the news there's a problem with coverage on this claim and from that point on Servpro was forgotten about.

Can you let us know if and when Servpro can get paid? Our total bill for our services is $13,881.96. If you need a copy of our estimate I will be happy to provide. Any help you can provide will be much appreciated.

A hand-written notation was on the email printout, which read: "It appears Mr. Clark's Escrow company is the issue. Don't know who that is but we were told Mr. Clark's insurance didn't get paid."

Plaintiff argues that the Trial Court erred by relying on a federal appellate court case as persuasive authority in this matter. Upon its statement that it had been unable to find controlling authority, the Trial Court relied on the 11th Circuit Court of Appeals case of *Mahens v. Allstate Ins. Co.*, 447 Fed. Appx. 51, 56 (11th Cir. 2011). The Trial Court recognized that the federal case, which was analyzing Georgia law, was not controlling but considered it to be persuasive in this matter. Trial courts may rely on persuasive authority in the absence of Tennessee authority on point. *See Ottinger v. Stooksbury*, 206 S.W.3d 73, 79 (Tenn. Ct. App. 2006).

However, we find the *Mahens* case to be distinguishable from the case before us. In *Mahens*, the agent for the insurance company did not authorize the company to perform work on the plaintiff's property. Instead, the plaintiff in *Mahens* personally authorized the work to be performed on his property. In the present case, Plaintiff presented proof that he did not authorize the demolition work performed by ServPro but that Mr. Webster, an agent for Tennessee Farmers, solely had authorized the work. Therefore, we find the *Mahens* case distinguishable from the current case.

The issue before us of whether summary judgment was appropriate turns on the existence of genuine issues of material fact, i.e., whether Mr. Webster, while acting as an agent for Tennessee Farmers, authorized the work performed on the Property by ServPro and whether the scope of work authorized by Plaintiff included the work that was authorized and began on May 28, 2013. If Mr. Webster was acting as an agent of Tennessee Farmers and authorized the work on the Property, Mr. Webster's actions may be binding on Tennessee Farmers, and therefore, Tennessee Farmers could be estopped to deny responsibility to pay for the work it authorized through its agent, Mr. Webster, and actually performed by ServPro beginning on May 28, 2013.

This Court has held that if an agency relationship exists, "[a] principal is bound by contracts made by its agent, provided the agent is acting within the scope of his actual or apparent authority." *S. Rehab. Specialists, Inc. v. Ashland Health Care Ctr., Inc.*, No. 01A01-9607-CH-00345, 1997 WL 203607, at *4 (Tenn. Ct. App. Apr. 28, 1997) (citing *Bells Banking Co. v. Jackson Centre, Inc.,* 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996)); *see also Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) ("When an agency relationship exists, the principal may be bound by the acts of the agent

performed on the principal's behalf and within the actual or apparent scope of the agency."); *Batey v. D. H. Overmyer Warehouse Co.*, 446 S.W.2d 686, 694 (Tenn. Ct. App. 1969) ("All corporate organizations act by and through boards, commissions, officers and employees, and if they act within the apparent scope of their authority, their actions are those of the corporation." (citing *Whitehaven Utility Dist. of Shelby County v. Ramsay*, 387 S.W.2d 351 (Tenn. 1964))). Additionally, "an agent acting within the general scope of his apparent authority, though exceeding his authority, binds his principal." *Indus. Life & Health Ins. Co. v. Trinkle*, 206 S.W.2d 414, 415 (Tenn. 1947). Concerning insurance companies, the Supreme Court has stated that "[a]s in the case of agencies in general an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority." *Bill Brown Const. Co., Inc. v. Glens Falls Ins. Co.*, 818 S.W.2d 1, 4 (Tenn. 1991).

In *Bill Brown Const. Co., Inc.*, the plaintiff requested a "full coverage policy" on the cargo transported in his business from the defendant insurer. *Id.* at 1. The plaintiff showed the insurance agent photos of the oversized cargo hauled in his business. *Id.* at 1-2. The insurance agent responded: "That's no problem, you've got full coverage." *Id.* at 2. An accident subsequently occurred where the cargo on the plaintiff's trailer struck an overhead bridge, damaging the cargo. *Id.* at 2. The insurer denied coverage because the tractor trailer had not collided with the bridge or been damaged in the accident. *Id.* at 2. According to the insurer, the policy provided coverage only if the cargo was damaged as a result of a collision involving the vehicle. *Id.* at 2. The Supreme Court ultimately held in *Bill Brown Const. Co., Inc.* that "an insurer may be estopped to deny coverage for any loss by the misrepresentations of its agent upon which the insured reasonably relies." *Id.* at 12. The Court further held that insurance companies have no "immunity from legal liability for express commitments made by his direct employee acting strictly in accordance with his authority." *Id.* at 13 (internal citation omitted).

Following the Court's opinion in *Bill Brown Const. Co., Inc.*, our Supreme Court held in *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 519-20 (Tenn. 2012), that "[a]n insurance company is generally deemed estopped to deny policy liability on a matter arising out of the negligence or mistake of its agent, and if either party has to suffer from an insurance agent's mistake, it must be the insurance company." (Internal citations omitted.) In *Tarrant*, the insured requested that a van be covered under the insured's commercial insurance policy, and not his personal policy. The agent assured the insured that his request would be complied with. The insured relied on the agent to provide the requested insurance coverage. However, due to a mistake by the agent, the van was placed on the personal policy. Our Supreme Court held that although insurance policies are generally controlled by basic contract principles, "as to the specific matter of a

- 14 -

mistake by an insurance agent as occurred in this case, the common law clearly dictates that the insurer is estopped to deny coverage."[2] *Id.* at 521.

Although *Bill Brown Const. Co., Inc.* and *Tarrant* involved insurance agents procuring insurance policies on behalf of their clients, we believe the Supreme Court's holdings would apply to a misrepresentation or a mistake made by an insurance adjuster. Such a mistake as apparently made here by Mr. Webster in authorizing ServPro's additional work, is not covered by Tennessee Code Annotated § 56-7-135. *See Johnson*, 74 S.W.3d at 343 ("When an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency."). If such insurance adjuster, acting as an agent on behalf of the insurance company, made a mistake by authorizing work on an insured's property when the policy does not provide coverage for the work, the agent's actions could bind the insurance company and estop the insurance company from denying financial responsibility for the work authorized by only the insurance company's agent and performed pursuant to that authorization. As a matter of public policy, an insurer or its agent should make a reasonable determination concerning coverage prior to authorizing service on behalf of the insured rather than commit their insured to a liability of thousands of dollars for work that the insured did not authorize and may never have authorized if the insured knew there was no insurance coverage for that work. There exists at least a genuine issue whether Mr. Webster, while acting as an agent for Tennessee Farmers, authorized the work on May 28, 2013, which began on the same date, even though Tennessee Farmers had both the date of the loss and the effective date of the policy readily available to it. Given that Tennessee Farmers has successfully argued that their policy was not in effect as of the date of the loss, Tennessee Farmers had

---

[2] The Court in *Tarrant* also held that the insurer should not be relieved of liability for its agent's mistake due to the insured's failure to discover the error and that the insured's payment of the insurance premiums did not ratify the agent's mistaken modification of coverage. *Tarrant*, 363 S.W.3d at 519, 521. Shortly after the *Tarrant* opinion was released, the general assembly enacted Tennessee Code Annotated § 56-7-135 in May 2012, which provides:

> (a) The signature of an applicant for or party to an insurance contract on an application, amendment, or other document stating the type, amount, or terms and conditions of coverage, shall create a rebuttable presumption that the statements provided by the person bind all insureds under the contract and that the person signing such document has read, understands, and accepts the contents of such document.

> (b) The payment of premium for an insurance contract, or amendment thereto, by an insured shall create a rebuttable presumption that the coverage provided has been accepted by all insureds under the contract.

We do not find this statute to be relevant in the present case as to whether Tennessee Farmers should be bound by the act of its insurance adjuster if he authorized work to be performed on the Property while acting as an agent of the company.

no authority to have work done on the Property and somehow obligate Plaintiff to pay for that work he never authorized.

The Trial Court found that as to the issue of who authorized the work to be performed on Plaintiff's property, Plaintiff had signed an authorization for ServPro to perform services on the Property and that the authorization form stated Plaintiff was responsible for costs not covered by insurance and ServPro works for the customer, not the insurance company, agent, or adjuster. However, the Trial Court failed to recognize the affidavits executed by employees of ServPro, which stated that Quint Webster with Tennessee Farmers actually authorized ServPro to perform the work on the Property beginning on May 28, 2013. Additionally, Plaintiff's affidavit states that the authorization he signed was for only one day of work to remove the water and that he had not signed additional documentation to authorize additional work. Plaintiff's affidavit further states that Mr. Webster informed him that Mr. Webster had authorized ServPro to place a dumpster on the Property to begin demolition. We hold that (1) whether Mr. Webster was acting as an agent of the insurance company, (2) whether Mr. Webster authorized ServPro to perform work on the Property, and (3) the scope of ServPro's services authorized by Plaintiff are genuine issues of material fact relevant to whether Tennessee Farmers can be estopped to deny responsibility to pay for the work it and only it allegedly authorized ServPro to perform on the Property and which ServPro actually performed. As such, we find and hold that the Trial Court erred by granting Tennessee Farmers' motion for summary judgment as to the work actually performed by ServPro beginning on May 28, 2013. The Trial Court, however, did not err in its determination that the effective date of the policy was and remained May 29, 2013. We, therefore, modify the Trial Court's grant of summary judgment and remand for further proceedings consistent with this Opinion.

## Conclusion

The judgment of the Trial Court is affirmed in part and reversed in part. The Trial Court's judgment granting summary judgment in favor of Tennessee Farmers is affirmed as to the effective date of the policy but is reversed as to Tennessee Farmers' liability for the work performed by ServPro, which was authorized and began on May 28, 2013. This cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed equally against the appellant, Robert F. Clark, and his surety, if any, and the appellee, Tennessee Farmers Mutual Insurance Company.

_____

D. MICHAEL SWINEY, CHIEF JUDGE